JEFFREY S. SHINBROT, ESQ.
(SBN 155486)
jeffrey@shinbrotfirm.com
JEFFREY S. SHINBROT, APLC
8200 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone: (310) 659-5444
Fax (310) 878-8304

Attorneys for Chapter 11 Debtor
Leonarda Guadalupe Aguilar

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Bk. No. 2:15-bk-16443-RN |
| LEONARDA GUADALUPE AGUILAR, | In a Case Under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 *et seq.*) |
| Debtor and Debtor-in-Possession. | |
| | FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED CHAPTER 11 PLAN |
| | <u>Disclosure Statement Hearing</u> |
| | Date:   To Be Set By the Court<br>Time:   _____<br>Ctrm:   1645<br>Court Address: 255 East Temple St.,<br>Los Angeles, CA 90012 |
| | <u>Plan Confirmation Hearing</u> |
| | Date:   To Be Set By the Court<br>Time:   _____<br>Ctrm:   1645<br>Court Address: 255 East Temple St.,<br>Los Angeles, CA 90012 |

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

    A.   Purpose of This Document ..................................................................................... 1

    B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ....................... 2

        1.   Time and Place of the Confirmation Hearing ................................................ 2

        2.   Deadline for Voting For or Against the Plan .................................................. 3

        3.   Deadline for Objecting to the Confirmation of the Plan ................................. 3

        4.   Identity of Person to Contact for More Information Regarding the Plan ................... 3

    C.   Disclaimer ......................................................................................................... 3

II. BACKGROUND .............................................................................................................. 4

    A.   Description and History of the Debtor's Business ................................................... 4

    B.   Principals/Affiliates of Debtor's Business ............................................................. 4

    C.   Management of the Debtor Before and After the Bankruptcy ................................... 4

    D.   Events Leading to Chapter 11 Filing .................................................................... 4

    E.   Significant Events During the Bankruptcy ............................................................ 4

        1.   Bankruptcy Proceedings ............................................................................. 4

        2.   Other Legal Proceedings ............................................................................. 5

        3.   Actual and Projected Recovery of Preferential or Fraudulent Transfers (29) .............. 6

        4.   Procedures Implemented to Resolve Financial Problems ............................... 6

        5.   Current and Historical Financial Conditions ................................................. 6

III. SUMMARY OF THE PLAN OF REORGANIZATION ................................................... 7

    A.   What Creditors and Interest Holders Will Receive Under the Proposed Plan .................. 7

    B.   Unclassified Claims ........................................................................................... 7

        1.   Administrative Expenses ............................................................................. 7

    2.    Priority Tax Claims .................................................................................. 8

C.    Classified Claims and Interests ................................................................. 9

    1.    Classes of Secured Claims ....................................................................... 9

    2.    Classes of Priority Unsecured Claims .................................................... 12

    3.    Class of General Unsecured Claims ........................................................ 12

    4.    Class(es) of Interest Holders .................................................................. 13

D.    Means of Effectuating the Plan ................................................................ 14

    1.    Funding for the Plan ............................................................................... 14

    2.    Post-Confirmation Management ............................................................. 14

    3.    Disbursing Agent ................................................................................... 14

E.    Risk Factors ............................................................................................ 14

F.    Other Provisions of the Plan .................................................................... 14

    1.    Executory Contracts and Unexpired Leases ........................................... 14

        a.    Assumptions .................................................................................. 14

        b.    Rejections ...................................................................................... 14

    2.    Changes in Rates Subject to Regulatory Commission Approval .............. 14

    3.    Retention of Jurisdiction ........................................................................ 14

G.    Tax Consequences of Plan ....................................................................... 15

IV. CONFIRMATION REQUIREMENTS AND PROCEDURES ............................................ 15

A.    Who May Vote or Object ......................................................................... 16

    1.    Who May Object to the Confirmation of the Plan .................................. 16

    2.    Who May Vote to Accept/Reject the Plan .............................................. 16

        a.    What is an Allowed Claim/Interest ................................................. 16

        b.    What is an Impaired Claim/Interest ................................................ 16

    3.    Who is Not Entitled to Vote .................................................................... 17

First Amended Disclosure Statement Describing Chapter 11 Plan

4.    Who Can Vote in More Than One Class ................................................ 17

5.    Votes Necessary to Confirm the Plan ................................................ 17

6.    Votes Necessary for a Class to Accept the Plan ................................ 18

7.    Treatment of Nonaccepting Classes ................................................ 18

8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es) ............ 18

B.    Liquidation Analysis ................................................................ 19

C.    Feasibility ........................................................................ 22

V. EFFECT OF THE CONFIRMATION OF PLAN ................................................ 25

A.    Discharge (105) .................................................................... 25

B.    Revesting of Property in the Debtor ................................................ 25

C.    Modification of Plan ............................................................... 25

D.    Post-Confirmation Status Report .................................................... 25

E.    Quarterly Fees ..................................................................... 25

F.    Post-Confirmation Conversion/Dismissal ............................................. 26

G.    Final Decree ....................................................................... 26

VI. SUPPORTING DECLARATIONS ......................................................... 27

EXHIBIT A – LIST OF ALL ASSETS ...................................................... 32

EXHIBIT B – APPRAISAL ............................................................... 36

EXHIBIT C – GENERAL UNSECURED CLAIMS ................................................ 54

EXHIBIT D-ESTRADA vs. AGUILAR DOCKET ................................................ 56

EXHIBIT E-STIPULATION AND ORDER APPROVING .......................................... 58

First Amended Disclosure Statement Describing Chapter 11 Plan

# I.

## INTRODUCTION

LEONARDA GUADALUPE AGUILAR ("Debtor" or "Proponent") is the Debtor in a Chapter 11 bankruptcy case. On April 23, 2015, Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 *et seq.*, Chapter 11 allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganizing plan which includes a Court approved agreement regarding the treatment of the Debtor's principal secured creditor, HSBC Bank, as set forth herein. In other words, the Proponent seeks to accomplish payments under the Plan by consensually restructuring the debt to HSBC Bank, which is secured by the Debtor's real property located at 13781 Eldridge Avenue, Sylmar, California ("Sylmar Property"), and paying other creditors as set forth herein over time. The Effective Date of the proposed Plan is 14 days after entry of an order confirming the Plan.

### A.    Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

<u>READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT</u>:

(1)    WHO CAN VOTE OR OBJECT,

(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT

COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN
LIQUIDATION,

(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS
DURING THE BANKRUPTCY,

(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE
WHETHER OR NOT TO CONFIRM THE PLAN,

(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND

(6)    WHETHER THIS PLAN IS FEASIBLE.

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.**    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.**    **Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on    , at    {A.M./P.M.} (*This date will be provided by the Court at the hearing*

2

*where the Court approves the Disclosure Statement)*, in Courtroom 1645, Edward R. Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012.

### 2.    Deadline for Voting For or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Jeffrey S. Shinbrot, Esq., JEFFREY S. SHINBROT, APLC, 8200 Wilshire Boulevard, Suite 400, Beverly Hills, California 90211, telephone (310) 659-5444, facsimile (310) 878-8304.

Your ballot must be received by _____ or it will not be counted.

### 3.    Deadline for Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon Jeffrey S. Shinbrot, Esq., JEFFREY S. SHINBROT, APLC, 8200 Wilshire Boulevard, Suite 400, Beverly Hills, California 90211, telephone (310) 659-5444, facsimile (310) 878-8304 by _____.

### 4.    Identity of Person to Contact for More Information Regarding the Plan

Any interested party desiring further information about the Plan should contact Jeffrey S. Shinbrot, Esq., JEFFREY S. SHINBROT, APLC, 8200 Wilshire Boulevard, Suite 400, Beverly Hills, California 90211, telephone (310) 659-5444, facsimile (310) 878-8304.

## C.    Disclaimer

The financial data relied upon in formulating the Plan is based on the Debtor's books and records, projections calculated based on the Debtor's records, and appraisals of Debtor's property.  The information contained in this Disclosure Statement is provided by the Debtor based on information in her possession and third party appraisers.  The Debtor represents that everything stated in the Disclosure Statement is true to the Debtor's best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

///

///

## II.

## BACKGROUND

**A.    Description and History of the Debtor's Business**

The debtor is an individual.  The Debtor left her employment due to medical disability but has now returned to work as of June 30, 2015 at the Employment Development Department. The Debtor receives approximately $1,750.00 (net pay) a month in income from this employment.  In addition, Debtor expects to receive $5,000.00 per month from her brother Vicente Aguilar who occupies the Sylmar property.  The Debtor attaches paystubs of both herself and her brother Vicente Aguilar in support of her ability to fund the Plan.

**B.    Principals/Affiliates of Debtor's Business**

The Debtor is an individual.

**C.    Management of the Debtor Before and After the Bankruptcy**

The Debtor is an individual.

**D.    Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

The Debtor filed this case to prevent a foreclosure sale on the Sylmar Property so that a sale or workout could be obtained.

**E.    Significant Events During the Bankruptcy**

**1.    Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred during this case:

The Court has approved the employment of the following professionals: The Court approved the employment of Jeffrey S. Shinbrot as general insolvency counsel for the Debtor in an order dated June 22, 2015.

On May 19, 2015, the United States Trustee filed a Motion under 11 U.S.C. § 1112(b)(1) to Convert, Dismiss or Appoint a Chapter 11 Trustee with an Order Directing Payment of Quarterly Fees and for Judgment Thereon ("Motion to Dismiss").  Thereafter, the

4

Debtor cured all compliance reporting deficiencies and payment delinquencies detailed by the United States Trustee. The United States Trustee and the Debtor entered a stipulation on June 19, 2015 resolving the Motion to Dismiss.

On June 11, 2015, the Debtor filed a Motion to Use Cash Collateral, which was approved by the Court in an order entered on August 14, 2015. The Court approved the Debtor's use of cash collateral through November 30, 2015. A continued hearing on cash collateral took place on December 1, 2015. The Court approved the Debtor's use of cash collateral through March 31, 2016.

On July 21, 2015, a Motion for Relief From Stay – Action in Non-Bankruptcy Forum was filed requesting that the Superior Court case *Estrada v. Aguilar* be permitted to proceed despite the automatic bankruptcy stay for the sole purpose of permitting the attorneys to be relieved as attorneys of record for plaintiff. On August 10, 2015, the Court entered an order approving the Motion for Relief from Stay. On October 29, 2015, Estrada dismissed her case against the Debtor. Annexed hereto as Exhibit D is a true and accurate copy of the docket from the Estrada case indicating the dismissal.

The Debtor has filed all of her monthly operating reports.

On December 21, 2015, the Debtor and HSBC Bank entered into a stipulation to resolve plan treatment of the HSBC claim, agreeing to a valuation of $850,000 for the Sylmar property, bifurcating the claim and agreeing to a monthly payment in the amount of $4,181.49. The Court entered its Order approving this agreement of December 29, 2015. The stipulation and agreement are annexed hereto as Exhibit E.

Currently, the following significant adversary proceedings and motions are still pending: None.

### 2.     Other Legal Proceedings

In addition to the proceedings discussed above, the Debtor is currently involved in the following non-bankruptcy legal proceedings: (1) *People v. Aguilar*, Los Angeles Superior Court, case number 4PY02835, municipal code violations – the only remaining proceeding in this case is a hearing for the Debtor to show sentencing compliance; (2) *Edelmira Estrada, et al.*

*v. Leonarda G. Aguilar*, Los Angeles Superior Court, litigation of allegations of wrongful death. Annexed hereto as Exhibit D is a true and accurate copy of the Los Angeles Superior Court docket indicting a dismissal of the Estrada action.

**3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers**

No funds are estimated to be realized from the recovery of fraudulent and preferential transfers.

**4.    Procedures Implemented to Resolve Financial Problems**

To attempt to fix the problems that led to the bankruptcy filing, Debtor has implemented the following procedures: The Debtor has obtained the consent of HSBC to this Chapter 11 plan. Under the Chapter 11 plan, the Debtor's payments to secured creditors will be reduced. In addition, the Debtor's income has increased because she was able to return to work on June 30, 2015 after disability leave.

**5.    Current and Historical Financial Conditions**

Historically, the Debtor was able to pay her debts as they came due. The Debtor suffered a temporary disability that prevented her from working. Her disability insurance benefits were less than her income from employment. The value of the Sylmar Property also declined, resulting in the Debtor owing more than the value of the property. Currently, the Debtor has returned to her regular employment and her income has increased by $1,750.00 per month. She also expects to receive $5,000.00 per month from family members as set forth herein. The Debtor owns the Sylmar Property, valued at approximately $850,000 and which secures debt that exceeds the property's value. The Debtor is on title with her parents to a single-family residence located at 10487 Laurel Canyon Blvd., Pacoima, California, valued at approximately $400,000 and secures debt that exceeds the property's value. The Debtor is on title to this property only and she does not have an equitable ownership interest in it.

Under the Plan, the Debtor will pay approximately $325 per month to priority tax claimants; $4,181.49 to HSBC and $150 per month to general unsecured creditors. As set forth in the Debtor's declaration, she has sufficient cash flow to make these payments.

The identity and fair market value of the estate's assets are listed in Exhibit A. An appraisal of the Sylmar Property is annexed as Exhibit B.

### III.

### SUMMARY OF THE PLAN OF REORGANIZATION

**A.      What Creditors and Interest Holders Will Receive Under the Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

**B.      Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class.

**1.      Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1). The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Jeffrey S. Shinbrot, Esq. | $15,000 | Paid in Full on Effective Date, if fees are approved by the Court; Creditor has agreed to payment after the Effective Date if there are insufficient funds on the Effective Date |
| Clerk's Office Fees | $0 | Paid in Full on Effective Date |
| Office of the U.S. Trustee Fees | $325.00 | Paid in Full on Effective Date |

7

| | TOTAL = |
|---|---|
| | $15,325.00 |

**Court Approval of Fees Required:**

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay $15,325 worth of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim. As indicated elsewhere in this Disclosure Statement, Debtor will have at least $12,000 in cash on hand on the Effective Date of the Plan. The source of this cash will be the Debtor's savings from her monthly income and family contributions. Jeffrey S. Shinbrot has agreed to accept less than payment in full on the Effective Date if sufficient funds to pay his claim in full are not available.

**2.      Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| • Name = Franchise Tax Board<br><br>• Type of tax = Income | $6,059.78 | Pymt interval<br>Pymt amt/interval<br>Begin date | = quarterly<br>= $326.61<br>= Last day of the quarter |

| | | | containing the Effective Date |
|---|---|---|---|
| • Date tax assessed = 2006 & 2014 | | End date | = 5 years thereafter |
| | | Interest Rate 3% | = 3% |
| | | Total Payout Amount 100 % | = $6,532.20 |
| • Name = Internal Revenue Service | $5,129.14 | Pymt interval | = quarterly |
| | | Pymt amt/interval | = $276.48 |
| • Type of tax = Income | | Begin date | = Last day of the quarter containing the Effective Date |
| • Date tax assessed = 2006 | | | |
| | | End date | = 5 years thereafter |
| | | Interest Rate % | = 3% |
| | | Total Payout Amount 100% | = $5,529.60 |
| • Name = Los Angeles County Tax Collector | $6,756 | Pymt interval | = quarterly |
| | | Pymt amt/interval | = $364.20 |
| • Type of tax = Property | | Begin date | = Last day of the quarter containing the Effective Date |
| • Date tax assessed = 2011, 2012, 2013, and 2014 | | End date | = 5 years thereafter |
| | | Interest Rate % | = 3% |
| | | Total Payout Amount 100% | = $7,284 |
| Total: | $17,944.92 | | |

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following

chart lists all classes containing Debtor's secured pre-petition claims and their treatment under

this Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|---|
| 1. | Secured claim of:<br><br>• Name = HSBC Bank USA, NA<br><br>• Collateral description = Sylmar Property<br><br>• Collateral value = $850,000<br><br>• Priority of security int. = 1st<br><br>• Principal owed = $950,000<br><br>• Pre-pet. arrearage amount = $479,943.27<br><br>• Post-pet. arrearage amount = $57,184.89<br><br>• Total claim amount = $1,393,670.51 | N | Y | • Pymt interval | = Monthly |
| | | | | • Pymt amt/interval | = $4,181.49 |
| | | | | • Balloon pymt | = $393,024.93 (approx. depending on Effective Date) |
| | | | | • Begin date | = December 1, 2015 |
| | | | | • End date | = June 1, 2036 (maturity date of loan documents) |
| | | | | • Interest rate % | = 4.25% fixed (amortized over 30 years) |
| | | | | • Total payout 100% of secured portion of claim | = $1,425,852.96 on secured portion of claim |
| | | | | • Treatment of Lien | = Creditor to have a secured claim of $850,000; the balance of creditor's claim shall be deem unsecured and the unsecured portion |

| | | | | |
|---|---|---|---|---|
| | | | | shall be included in Class 4 to be paid as set forth below |
| 2. | Secured claim of:<br><br>• Name = The Mortgage Store<br><br>• Collateral description = Sylmar Property<br><br>• Collateral value = $850,000<br><br>• Priority of security int. = 2nd<br><br>• Principal owed = unknown<br><br>• Pre-pet. arrearage amount = unknown<br><br>• Post-pet. arrearage amount = unknown<br><br>• Total claim amount = $120,000 | N | Y | Creditor's claim is wholly unsecured based on value of Property and shall be unsecured Class 4 to be paid as set forth below; creditor entitled to vote as member of Class 4 only.  The debt to The Mortgage Store shall be fully void, discharged and released against the Sylmar property entry of a chapter 11 discharge of the Debtor. |
| 2. | Secured claim of:<br><br>• Name = Wells Fargo Bank, NA<br><br>• Collateral description = 10487 Laurel Canyon Blvd., Pacoima, CA 91331 (not estate property)<br><br>• Collateral value = $400,000 (not estate property)<br><br>• Priority of security | N | N | Unimpaired; to be paid as agreed under loan documents |

First Amended Disclosure Statement Describing Chapter 11 Plan

| | | | |
|---|---|---|---|
| int. = 1st <br> • Principal owed = unknown <br> • Pre-pet. arrearage amount = unknown <br> • Post-pet. arrearage amount = unknown <br> • Total claim amount = $444,560.03 | | | |

## 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims and their treatment under this Plan (see Exhibit G for more detailed information about each priority unsecured claim): None.

## 3.    Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims (see Exhibit C for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| 4. | General unsecured claims <br><br> • Total amt of | Y | • Pymt interval <br> • Pymt amt/interval <br> • Begin date | = Quarterly <br> = $600 <br> = 15 days after |

| | | | | |
|---|---|---|---|---|
| | claims = $1,130,550.98 (Includes $22,320.04 scheduled unsecured claims and unsecured portions of Claims 1, 2, and 3 above) | | ○ End date<br><br>○ Interest rate %<br><br>○ Total payout 1% (Percentage payment assumes all possible creditor claims allowed. Debtor reserves the right to file objections to claims both before and after confirmation. Ultimate amount of allowed unsecured claims will be paid pro rata share of amounts paid towards claims in Class 4) | the Effective Date<br><br>= 5 years thereafter<br>= 0<br><br><br>= $12,000 |

## 4.    Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder. The following chart identifies the Plan's treatment of the Class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | Interest holders | N | Debtor to retain assets not used to pay creditor claims |

13

**D.      Means of Effectuating the Plan**

    **1.      Funding for the Plan**

    The plan will be funded by the following: The Debtor's income from employment and family contributions as set forth in the annexed declarations.

    **2.      Post-Confirmation Management**

    The Debtor will handle all post-confirmation management issues including payment of creditor claims pursuant to the Plan.

    **3.      Disbursing Agent**

    The Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

**E.      Risk Factors**

    The proposed plan has the following risks: There is a possibility of default under the terms of the Plan, in that the Debtor's income may decrease.  In which case, the Debtor may not have sufficient income to make the payments.

**F.      Other Provisions of the Plan**

    **1.      Executory Contracts and Unexpired Leases**

        **a.      Assumptions**

    The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan: None.

        **b.      Rejections**

    On the Effective Date, the following executory contracts and unexpired leases will be rejected: None.

    **2.      Changes in Rates Subject to Regulatory Commission Approval**

    This Debtor is not subject to governmental regulatory commission approval of its rates.

    **3.      Retention of Jurisdiction**

The Court will retain jurisdiction to the extent provided by law.

**G.    Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the Debtor's tax liability: At this time, the Debtor is unaware of any negative tax consequences arising from confirmation of the Plan. The Debtor's attorney, however, does not provide tax advice. Creditors and parties-in-interest should conduct their own independent investigation of the Debtor's tax returns and potential tax consequences.

# IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7

15

liquidation, and whether the Plan is feasible. These requirements are <u>not</u> the only requirements for confirmation.

**A.      Who May Vote or Object**

     **1.      Who May Object to the Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

     **2.      Who May Vote to Accept/Reject the Plan**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

     **a.      What is an Allowed Claim/Interest**

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS DECEMBER 31, 2015. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult Exhibit C to see how the Proponent has characterized your claim or interest.

     **b.      What is an Impaired Claim/Interest**

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general

unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that classes 1, 2, 3, and 4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that class 5 is unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.    Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class,

and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.7. and 8.}.

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan asks <u>the Court</u> to confirm this Plan by "cramdown" on impaired classes if any of these classes do not vote to accept the Plan. Please note that the proposed Plan treatment described by this Disclosure Statement cannot be crammed down on the following classes: None. AS A RESULT, IF ANY OF THESE CLASSES DOES <u>NOT</u> VOTE TO ACCEPT THE PLAN, THE PLAN WILL <u>NOT</u> BE CONFIRMED.

**B.     Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims.  Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation.  The Plan Proponent maintains that this requirement is met here for the following reasons:

In a Chapter 7 case, the Debtor's income would not be property of the Estate, and none of the Debtor's income would go to pay creditors.  Under the Plan, the Debtor is contributing income to pay priority tax, secured and general unsecured claims.

In a Chapter 7 liquidation, the trustee would have no assets of value to liquidate because the Debtor's only property, the Sylmar Property, is encumbered by liens that exceed its value.  The secured creditors would likely foreclose on the Sylmar Property, resulting in payment to HSBC, Class 1, only.  Creditors in Classes 2 and 4 would receive nothing.  The Class 3 creditor would only be paid to the extent non-debtors continue to make payments on the debtor or the creditor proceeds against the non-estate property securing the loan.

1    Below is a demonstration, in balance sheet format, that all creditors and interest holders

2    will receive at least as much under the Plan as such creditor or interest holder would receive

3    under a Chapter 7 liquidation.

4    ///

5    ///

6    ///

7    ///

8    ///

9    ///

10    ///

11    ///

12    ///

13    ///

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

First Amended Disclosure Statement Describing Chapter 11 Plan

**ASSETS VALUE AT LIQUIDATION VALUES:**

CURRENT ASSETS
   a.   Cash on hand        $4,500
   b.   Accounts receivable   $0
   c.   Inventories       $0

TOTAL CURRENT ASSETS   $4,500

FIXED ASSETS
   a.   Office furniture & equipment   $0
   b.   Machinery and equipment   $0
   c.   Automobiles   $0
   d.   Building & Land   $850,000

TOTAL FIXED ASSETS   $850,000

OTHER ASSETS
   a.   Customer list   $0
   b.   Other intangibles   $0

TOTAL OTHER ASSETS   $0

**TOTAL ASSETS AT LIQUIDATION VALUE**   $854,500

**Less:**
Secured creditor's recovery   $1,513,670.50 (creditors secured by estate property only)
**Less:**
Chapter 7 trustee fees and expenses   $60,885
**Less:**
Chapter 11 administrative expenses   $15,325
**Less:**
Priority claims,
excluding administrative expense claims   $17,944.92
**Less:**
Debtor's claimed exemptions   $0

   (1)   Balance for unsecured claims   $0
   (2)   Total amount of unsecured claims   $1,130,550.98

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION (2):   = 0%**
**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:   = 1%**

---

**1/**   Note: The deficiency portion of a secured recourse claim must be added to the total amount of unsecured claims.

**2/**   Note: If this percentage is greater than the amount to be paid to the unsecured creditors on a "present value basis" under the Plan, the Plan is not confirmable unless Proponent obtains acceptance by every creditor in the general unsecured class.

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 0% |
| Priority Tax Claims | 100% | 0% |
| Class 1 – | 100% of secured portion of claim; 1% of unsecured portion | 57% of total claim (after 6% costs of sale on sale of $850,000) |
| Class 2 – | 1% | 0% |
| Class 3 – | 100% | 0% (but would retain claim against non-debtors and security interest in non-estate property) |
| Class 4 – | 1% | 0% |

## C.    Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Cash debtor will have on hand by Effective Date | $12,000 |
| **To Pay:** Administrative claims | -$325.00 (Jeffrey S. Shinbrot will accept payment after the Effective Date) |

| | |
|---|---|
| **To Pay:** Statutory costs & charges | -$0 |
| **To Pay:** Other Plan Payments due on Effective Date | -$0 |
| Balance after paying these amounts............................................................. | $11,675 |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| $4,500 | Cash in DIP Account now |
|---|---|
| +7,500 | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| +0 | Borrowing |
| +0 | Capital Contributions |
| +0 | Other |
| $12,000 | Total |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

In summary, the Plan proposes to pay $4,703.92 each month ($4,181.49 to HSBC; $322.43 to priority tax creditors; $200 to unsecured creditors). As set forth in the annexed declarations and exhibits, the Debtor will have positive cash flow, after paying operating expenses (in this case, living expenses) and Plan payments for the life of the Plan. The final Plan payment is expected to be paid in or around January 2021. The Plan Proponent contends that the Debtor's financial projections are feasible as evidenced by the exhibits (pay stubs) annexed hereto. Furthermore, as discussed earlier in the Disclosure Statement at Section {II.E.4}, Debtor has implemented procedures to increase income, namely returning to work at her regular employer.

## V.

## EFFECT OF THE CONFIRMATION OF PLAN

**A.    Discharge**

This Plan provides that upon substantial consummation of the Plan and entry of a final decree by the Court, Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141. However, the discharge will not discharge any liability imposed by the Plan.

**B.    Revesting of Property in the Debtor**

Except as provided in Section {V.E.}, and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.    Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

**E.    Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**G.    Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

DATED: 2\10_____, 2016          JEFFREY SHINBROT, APLC


                                By: _____
                                JEFFREY S. SHINBROT, Attorneys for
                                Leonarda Aguilar, Debtor in Possession

## VI.

## SUPPORTING DECLARATIONS

## DECLARATION OF LEONARDA AGUILAR

I, LEONARDA AGUILAR, declare as follows:

I am the debtor in this action. As to the following facts I know them to be true of my own personal knowledge and if called upon to testify in this matter, I could and would do so as set forth herein.

1.    I have provided documents and information to my attorney, Jeffrey S. Shinbrot, and assisted in preparing the Disclosure Statement.

2.    I have reviewed the foregoing Disclosure Statement, and I believe that its contents are accurate and complete.

3.    I have returned from disability to my full time employment at the Employment Development Department and attach a true and accurate copy of most recent paystub indicating a net monthly income of approximately $1,750. Additionally, as set forth in the annexed declaration of my brother Vicente Aguilar, he resides at the Sylmar property and will contribute $5,000.00 per month. My cash flow therefore is sufficient to the fund the Plan as follows:

| Net Income from Earnings | $1,750.00 |
|---|---|
| Contributions from Vicente Aguilar | $5,000.00 |
| Plan Payments | ($4,704.00) |
| Electricity/Gas | ($40.00) |
| Food | ($350.00) |
| Phone | ($170.00) |
| Rent | ($450.00) |
| Transportation | ($200.00) |
| Vehicle Insurance | ($150.00) |

| Total expenses | ($6,104.00) |
| NET CASH FLOW | $646.00 |

    I declare under penalty under the laws of the United States of America that the foregoing is true and correct.

*Leonarda Aguilar*

Leonarda Aguilar

Disclosure Statement Describing Chapter 11 Plan

FEB-09-2016  19:57        EDD-PASADENA COMM        818 890 9456        P.04/04

# DECLARATION OF VICENTE D. AGUILAR

I, VICENTE D. AGUILAR declare as follows:

    1.    As to the following facts, I know them to be true of my own personal knowledge and if called upon to testify in the matter, I could and would do so as set forth herein.

    2.    I am employed by the Department of Water and Power and annexed hereto are true and accurate copies of my paystubs for a four week period, as indicated therein, my net pay is in excess of $6,680.00.00.

    3.    I reside at 13781 Eldridge Avenue, Sylmar, California ("Sylmar Property") described in the above Disclosure Statement, and I have agreed to pay $5,000.00 to my sister LEONARDA AGUILAR during the life of her chapter 11 plan.

I declare under penalty under the laws of the United States of America that the foregoing is true and correct.

_Vicente D. Aguilar_

Vicente D. Aguilar

Disclosure Statement Describing Chapter 11 Plan

TOTAL P.04

**PAYSTUBS**

**DEPARTMENT OF WATER AND POWER**
**DIRECT DEPOSIT ADVICE**

STATEMENT OF EARNINGS, ALLOWANCES, AND DEDUCTIONS
RETAIN THIS STATEMENT FOR YOUR RECORDS
PERIOD ENDING: 01-10-16

4315533   000717
S-02   S-02

| ROLL | SEC. | EMP. NO. | NAME | SUBJ. TO WITHHOLDING | GROSS EARNINGS | TOTAL DED. | NET PAY |
|------|------|----------|------|----------------------|----------------|------------|---------|
| 09 | 04 | | VICENTE D AGUILAR | 5114.25 | 5487.39 | 1761.05 | 3726.34 |

| EARNINGS | HRS. | AMOUNT | DEDUCTIONS | AMOUNT | | | | |
|----------|------|--------|------------|--------|---|---|---|---|
| REGULAR | 72.0 | 2770.49 | RETIREMENT PLA | 187.68 | VACATION ACCRUED AS OF: | | YEAR TO DATE EARNINGS | |
| HOLIDAY | 8.0 | 307.83 | FLX BC HM | .00 | | | | |
| OT @ 1 1/2X | 24.5 | 1414.10 | FLX IBEW PPO | .00 | 01-10 | | | |
| PREMIUM TIME | 8.0 | 461.75 | FSA MEDICAL EX | 38.46 | HRS. MIN. | GROSS | SUBJECT TO WITHHOLDING | |
| O.T. MEALS | | 60.00 | FSA ADMIN FEE | 1.42 | 288-00 | 10112.66 | 9516.38 | |
| SHIFT DIFF | 104.0 | 323.22 | DONORS WEL PLA | 1.00 | | | | |
| UFRM/SHOE PMT | | 150.00 | ACEBSA | 11.45 | | | | |

| | | | | | WITHHOLDING TAXES | | |
|---|---|---|---|---|---|---|---|
| | | | | | FEDERAL | STATE | FICA |
| | | | | | 1053.00 | 391.21 | 76.83 |
| | | | | | | YEAR TO DATE | |
| | | | | | 1906.00 | 709.59 | 143.34 |

184.70=6% HLTHCARE CONTRIBUT'N ON EMPL'EE BEHALF

---

**DEPARTMENT OF WATER AND POWER**
**DIRECT DEPOSIT ADVICE**

STATEMENT OF EARNINGS, ALLOWANCES, AND DEDUCTIONS
RETAIN THIS STATEMENT FOR YOUR RECORDS
PERIOD ENDING: 12-27-15

4306540   000817
S-02   S-02

| ROLL | SEC. | EMP. NO. | NAME | SUBJ. TO WITHHOLDING | GROSS EARNINGS | TOTAL DED. | NET PAY |
|------|------|----------|------|----------------------|----------------|------------|---------|
| 09 | 04 | | VICENTE D AGUILAR | 4402.13 | 4625.27 | 1663.40 | 2961.87 |

| EARNINGS | HRS. | AMOUNT | DEDUCTIONS | AMOUNT | | | | |
|----------|------|--------|------------|--------|---|---|---|---|
| REGULAR | 36.0 | 1385.24 | RETIREMENT PLA | 187.68 | VACATION ACCRUED AS OF: | | YEAR TO DATE EARNINGS | |
| VACATION | 32.0 | 1231.33 | IBEW DUE CODE | 84.50 | | | | |
| ALLOWED TIME | 4.0 | 153.92 | FSA MEDICAL EX | 38.46 | 12-27 | | | |
| HOLIDAY | 8.0 | 307.83 | FSA ADMIN FEE | 1.42 | HRS. MIN. | GROSS | SUBJECT TO WITHHOLDING | |
| OT @ 1 1/2X | 8.5 | 490.61 | SAFETY SHOE | 101.00 | 288-00 | 4625.27 | 4402.13 | |
| O.T. @ 2X | 2.0 | 153.92 | DONORS WEL PLA | 1.00 | | | | |
| PREMIUM TIME | 12.0 | 692.62 | ACEBSA | 11.45 | | | | |
| O.T. MEALS | | 30.00 | | | | | | |
| SHIFT DIFF | 56.5 | 179.80 | | | | | | |

| | | | | | WITHHOLDING TAXES | | |
|---|---|---|---|---|---|---|---|
| | | | | | FEDERAL | STATE | FICA |
| | | | | | 853.00 | 318.38 | 66.51 |
| | | | | | | YEAR TO DATE | |
| | | | | | 853.00 | 318.38 | 66.51 |

184.70=6% HLTHCARE CONTRIBUT'N ON EMPL'EE BEHALF



STATE OF CALIFORNIA        STATEMENT OF EARNINGS AND DEDUCTIONS        OFFICE OF STATE CONTROLLER
L G AGUILAR                                                                    1522
AGY/UNIT 280-155   PAY PERIOD 12/15        WARRANT NO
TAX YEAR 16       ISSUE DATE 01/07/16
TAX STATUS    FED S-05    STATE S-05

| | GROSS PAY | TAXABLE GROSS | DEDUCTIONS | NET PAY |
|---|---|---|---|---|
| CURRENT | 2148.30 | 1955.05 | 829.55 | 1318.75 |
| YEAR-TO-DATE [1] | 2148.30 | | | |

| EARNINGS | DAYS | HOURS | GROSS | DEDUCTIONS | AMOUNT |
|---|---|---|---|---|---|
| REGULAR | 90.00 | | 2148.30 | FEDERAL TAX | 8.01 |
| | | | | ✳RETIREMENT | 130.82 |
| | | | | SOC SEC | 132.42 |
| | | | | MEDICARE | 30.97 |
| | | | | CASDI | 19.22 |
| | | | | ✳F DLTADNTL | 12.43 |
| | | | | ✳457 PLAN | 50.00 |
| | | | | SEIU1000F | 27.89 |
| | | | | SUP ADM CHG | 1.50 |
| | | | | DUES-IAMP | 4.00 |
| | | | | ST TAX LEVY | 412.29 |

EMPLOYER CONTRIBUTIONS (current and adjustments)

| RETIREMNT | SOC SEC | HLTH/FLEX |
|---|---|---|
| 540.30 | 132.42 | 37.28 |
| MEDICARE | | |
| 30.97 | | |

**EXHIBIT A**

## EXHIBIT A – LIST OF ALL ASSETS

- Farm land located at 13781 Eldridge Avenue, Sylmar, CA 91342 – liens exceed value
- Minimal personal property assets all subject to exemptions. See scheduled B annexed hereto.

Case 2:15-bk-16443-RN   Doc 1   Filed 04/23/15   Entered 04/23/15 16:46:55   Desc
Main Document     Page 13 of 25

B6B (Official Form 6B) (12/07)

IN RE Aguilar, Leonarda Guadalupe                                      Case No. _____
_____
          Debtor(s)                                                                     (If known)

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

. If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1.  Cash on hand. | X | | | |
| 2.  Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Bank of America checking account<br>Bank of America savings account | | 50.00<br>50.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, include audio, video, and computer equipment. | | Household furnishings and appliances | | 3,200.00 |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | | Womens wearing apparel | | 1,000.00 |
| 7.  Furs and jewelry. | | Misc.,Jewerly | | 500.00 |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interest in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10.  Annuities. Itemize and name each issue. | X | | | |
| 11.  Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12.  Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | 457b Retirement (ERISA QUALIFIED)<br>CALPERS retirment(ERISA QUALIFIED) | | 7,000.00<br>2,000.00 |
| 13.  Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14.  Interests in partnerships or joint ventures. Itemize. | X | | | |

© 1993-2013 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6B (Official Form 6B) (12/07) - Cont.

IN RE Aguilar, Leonarda Guadalupe _____    Case No. _____
                                    Debtor(s)                                (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements in which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 1999 Chevrolet Tahoe (120K plus mileage) | | 2,500.00 |
| | | 2001 Ford Expendition non-operational (vehicle a total loss in accident) | | 100.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |

© 1993-2013 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

Case 2:15-bk-16443-RN   Doc 1   Filed 04/23/15   Entered 04/23/15 16:46:55   Desc
Main Document     Page 15 of 25

B6B (Official Form 6B) (12/07) - Cont.

IN RE Aguilar, Leonarda Guadalupe                                     Case No. _____
            Debtor(s)                                                        (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 34.  Farm supplies, chemicals, and feed. | X | | | |
| 35.  Other personal property of any kind not already listed. Itemize. | X | | | |
| | | | TOTAL | 16,400.00 |

© 1993-2013 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

(Include amounts from any continuation sheets attached.
Report total also on Summary of Schedules.)

_____0_ continuation sheets attached

**EXHIBIT B**

# APPRAISAL OF REAL PROPERTY



### LOCATED AT
13781 Eldridge Ave
Sylmar, CA 91342
Book 1, Page 605, Block 16

### FOR
Leonarda Aguilar c/o Jeffrey Shinbrot, Esq

### OPINION OF VALUE
$ 850,000

### AS OF
November 1, 2015

### BY
Elizabeth Eyerman, CGREA

| Owner | Leonarda G. Aguilar | | | File No. Aguilar | |
|---|---|---|---|---|---|
| Property Address | 13781 Eldridge Ave | | | | |
| City | Sylmar | County Los Angeles | State CA | Zip Code 91342 | |
| Client | Leonarda Aguilar c/o Jeffrey Shinbrot, Esq | | | | |

## TABLE OF CONTENTS

Cover Page ................................................................................................................ 1
USPAP Identification .................................................................................................. 2
Statement of Limiting Conditions .............................................................................. 3
URAR -- 6/93 ............................................................................................................ 5
Additional Comparables 4-6 ...................................................................................... 7
Comparable Sales Map .............................................................................................. 8
13781 Eldridge - Subject Plat Map ........................................................................... 9
Subject Photos ........................................................................................................... 10
Comparable Photos 1-3 ............................................................................................. 11
Comparable Photos 4-6 ............................................................................................. 12
Description Addendum ............................................................................................... 13
Additional Underlying Assumptions .......................................................................... 15
Appraiser's Qualifications .......................................................................................... 17

| Owner | Leonarda G. Aguilar | | | | File No. Aguilar |
|---|---|---|---|---|---|
| Property Address | 13781 Eldridge Ave | | | | |
| City | Sylmar | County Los Angeles | | State CA | Zip Code 91342 |
| Client | Leonarda Aguilar c/o Jeffrey Shinbrot, Esq | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

**This Report is one of the following types:**

☒ Appraisal Report    (A written report prepared under Standards Rule   2-2(a)  , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted    (A written report prepared under Standards Rule   2-2(b)  , pursuant to the Scope of Work, as disclosed elsewhere in this report,
Appraisal Report    restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
— The statements of fact contained in this report are true and correct.
— The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
— Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
— Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
— I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
— My engagement in this assignment was not contingent upon developing or reporting predetermined results.
— My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
— My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
— Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
— Unless otherwise indicated, no one provided significant real property appraisal assistance to the person signing this certification.
**Electronic Signature** If the appraisal report was prepared in Electronic Data Interchange (EDI) format, the report can be transported electronically by EDI or PDF procedures. The appraiser's signature that is placed on the appropriate pages of the appraisal report and those pages requiring signature, complies with the Federal and State laws and is a true representation of the appraiser's signature that conducted and signed the appraisal report. A complete appraisal with photographs and addenda, etc was sent and it is assumed that the intended recipient(s) received the complete appraisal.

### Reasonable Exposure Time    (USPAP defines Exposure Time as the estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.)
My Opinion of Reasonable Exposure Time for the subject property at the market value stated in this report is:    Approximately 60 days
at a listing price of $850,000 to $900,000.

### Comments on Appraisal and Report Identification
Note any USPAP-related issues requiring disclosure and any state mandated requirements:

The scope of the information includes the gathering and analysis of pertinent market data to assist in the conclusion of value for the subject property. Information is obtained through such sources as real estate brokers and agents (MLS), public records (ie. title companies, assessor's office), data collection and reporting services (ie. Corelogic, NDC, CoStar), developers, investors and the client.

This appraisal report is prepared for the sole and exclusive use of the client/intended user, identified within this report as the party or parties who engaged the appraiser in this specific assignment. The intended use is to determine market value for asset evaluation/possible bankruptcy purposes as of the appraisal date, subject to scope of work, purpose of appraisal, reporting requirements of the appraisal report form and definition of market value. No other use is authorized.

The property is appraised as though free of liens and encumbrances, in responsible ownership and under competent and aggressive management.

Neither a building inspection or termite report was available for review. The appraiser is not a building inspector. The report should not be relied upon to disclose any conditions present in or in proximity to the subject property. The appraisal report does not guarantee that the property is free of any type of defect or environmental influence.

The appraisal date is November 1, 2015. Subject photos were taken at inspection date of November 1, 2015.

**APPRAISER:**

Signature:
Name: Elizabeth Everman

State Certification #:   AG 010339
or State License #:
State:  CA   Expiration Date of Certification or License:   12/14/16
Date of Signature and Report:   November 6, 2015
Effective Date of Appraisal:   November 1, 2015
Date of Inspection (if applicable):  November 1, 2015

Inspection of Subject:  ☐ None  ☐ Interior and Exterior  ☒ Exterior-Only

**SUPERVISORY or CO-APPRAISER (if applicable):**

Signature:
Name:

State Certification #:
or State License #:
State:   Expiration Date of Certification or License:
Date of Signature:

Inspection of Subject:  ☐ None  ☐ Interior and Exterior  ☐ Exterior-Only
Date of Inspection (if applicable):

Form ID14E — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

38

Page #3

13781 Eldridge
File No. Aguilar

**DEFINITION OF MARKET VALUE:**  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.  Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.  (Source: FDIC Interagency Appraisal and Evaluation Guidelines, October 27, 1994.)

> \* Adjustments to the comparables must be made for special or creative financing or sales concessions.   No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions.   Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.   Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**  The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1.   The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it.  The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title.  The property is valued on the basis of it being under responsible ownership.

2.   Any sketch provided in the appraisal report may show approximate dimensions of the improvements and is included only to assist the reader of the report in visualizing the property.  The appraiser has made no survey of the property.

3.   The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4.   Any distribution of valuation between land and improvements in the report applies only under the existing program of utilization. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

5.  The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous waste, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  This appraisal report must not be considered an environmental assessment of the subject property.

6.   The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.  The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

7.   The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

8.   The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

9.   The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent.  The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

10.  The appraiser is not an employee of the company or individual(s) ordering this report and compensation is not contingent upon the reporting of a predetermined value or direction of value or upon an action or event resulting from the analysis, opinions, conclusions, or the use of this report.  This assignment is not based on a required minimum, specific valuation, or the approval of a loan.

11.  The effective date of the appraisal is November 1, 2015.  The inspection was November 1, 2015, exterior inspection only.  The owner has provided a description of the interior of the improvements.  The appraiser has assumed the property was in average condition/quality at appraisal date and has based her conclusions on this information.  Should this information be shown to be incorrect, the values stated within this report may be different.

13781 Eldridge
File No. Aguilar

**CERTIFICATION:**   The appraiser certifies and agrees that:

1.   The statements of fact contained in this report are true and correct.

2.   The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial and unbiased professional analyses, opinions, and conclusions.

3.   Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest interest with respect to the parties involved.

4.   Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.   I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

6.   My engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.   My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8.   My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

9.   Unless otherwise indicated, I have made a personal inspection of the interior and exterior areas of the property that is the subject of this report, and the exteriors of all properties listed as comparables.

10.   Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

ADDRESS OF PROPERTY ANALYZED:      13781 Eldridge Ave, Sylmar, CA 91342

| APPRAISER: | SUPERVISORY or CO-APPRAISER (if applicable): |
|---|---|
| Signature: | Signature: |
| Name:   Elizabeth Everman | Name: |
| Designation:   Certified General Real Estate Appraiser | Designation: |
| State Certification #:   AG 010339 | State Certification #: |
| or State License #: | or State License #: |
| State:  CA    Expiration Date of Certification or License:   12/14/16 | State:      Expiration Date of Certification or License: |
| Date Signed:   November 6, 2015 | Date Signed: |
| | ☐ Did  ☐ Did Not  Inspect Property |

Form ACR2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Page #5

# UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. Aguilar

| Property Description | | | | | | |
|---|---|---|---|---|---|---|
| Property Address 13781 Eldridge Ave | | City Sylmar | | State CA | Zip Code 91342 | 13781 Eldridge |
| Legal Description Book 1, Page 605, Block 16 | | | | County Los Angeles | | |
| Assessor's Parcel No. 2503-010-029 | | | Tax Year 2015 | R.E. Taxes $ 12,718.26 | | Special Assessments $ |
| Borrower No Borrower | | Current Owner Leonarda G. Aguilar | | Occupant: ☒ Owner ☐ Tenant ☐ Vacant | | |
| Property rights appraised ☒ Fee Simple ☐ Leasehold | | Project Type ☐ PUD ☐ Condominium (HUD/VA only) | | HOA $ | | /Mo. |
| Neighborhood or Project Name Sylmar | | | Map Reference 482/C2 | | Census Tract 1060.20 | |
| Sale Price $ N/A | Date of Sale N/A | | Description and $ amount of loan charges/concessions to be paid by seller N/A | | | |
| Lender/Client Leonarda Aguilar c/o Jeffrey Shinbrot, Esq | | | Address 13781 Eldridge Avenue, Sylmar, CA 91342 | | | |
| Appraiser Elizabeth Eyerman | | | Address 12203 Texas Avenue, Los Angeles, CA 90025 | | | |

| Location | ☐ Urban | ☒ Suburban | ☒ Rural | Predominant occupancy | Single family housing | | Present land use % | Land use change |
|---|---|---|---|---|---|---|---|---|
| | | | | | PRICE $(000) | AGE (yrs) | One family 85 | ☒ Not likely ☐ Likely |
| Built up | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | ☒ Owner | Low 1 | 325 | 2-4 family 5 | ☐ In process |
| Growth rate | ☐ Rapid | ☒ Stable | ☐ Slow | ☐ Tenant | | | Multi-family | To: |
| Property values | ☐ Increasing | ☒ Stable | ☐ Declining | | High 950 | 90 | Commercial | |
| Demand/supply | ☐ Shortage | ☒ In balance | ☐ Over supply | ☒ Vacant (0-5%) | Predominant | | | |
| Marketing time | ☐ Under 3 mos. | ☒ 3-6 mos. | ☐ Over 6 mos. | ☐ Vac.(over 5%) | 495 | 45 | Trails 10 | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics:  Apx San Fernando Rd to SW; Olive View Dr to N; Hubbard St to SE;  Well-established low density single family neighborhood built-up in the early to mid-1900s. Equestrian trails are prevalent throughout the area.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.):  Average North San Fernando Valley location with good proximity to educational, recreational, shopping & employment throughout the San Fernando Valley. Access to freeways which connect to communities and cities throughout the southland is good.  Properties in subject area appeal to all sectors of the Southern California economy.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.):  Prices are rising as economy improves and supply of existing homes for sale is low. While interest rates remain low, financing has tightened for borrowers with low equity. Short sales/foreclosures are not common in the area. No concessions/buydowns noted.  Marketing time & time on market estimated at under 3 months for competively priced properties sold to well-qualified buyers.

| Project Information for PUDs (if applicable) -- Is the developer/builder in control of the Home Owners' Association (HOA)? | ☐ Yes ☐ No |
|---|---|
| Approximate total number of units in the subject project ___ | Approximate total number of units for sale in the subject project ___ |

Describe common elements and recreational facilities:

| Dimensions 172 x 619.56 apx | | | Topography | Level |
|---|---|---|---|---|
| Site area 106,564 | | Corner Lot ☐ Yes ☒ No | Size | Larger than typical |
| Specific zoning classification and description LAA1-1K, Very low II residential; Equine keeping | | | Shape | Rectangle |
| Zoning compliance ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | | | Drainage | Appears adequate |
| Highest & best use as improved: ☒ Present use ☐ Other use (explain) | | | View | None |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | Landscaping | Average |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | Asphalt | ☒ | | Driveway Surface | Asphalt |
| Gas | ☒ | | Curb/gutter | Concrete | ☒ | | Apparent easements | Typical Utility |
| Water | ☒ | | Sidewalk | Concrete | ☒ | | FEMA Special Flood Hazard Area ☐ Yes ☒ No | |
| Sanitary sewer | ☒ | | Street lights | Standard | ☒ | | FEMA Zone X | Map Date 09/26/2008 |
| Storm sewer | ☒ | | Alley | No | | | FEMA Map No. 06037C1075F | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.):   Subject was originally constructed in 1953 as a single family residence to codes existing at that time.

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units One | Foundation Concrete | Slab Yes | Area Sq. Ft. N/A | Roof ☐ |
| No. of Stories One | Exterior Walls Wood/Stucco | Crawl Space No | % Finished | Ceiling ☐ |
| Type (Det./Att.) Detached | Roof Surface Comp/Tile | Basement No | Ceiling | Walls ☐ |
| Design (Style) Ranch | Gutters & Dwnspts. Yes | Sump Pump No | Walls | Floor ☐ |
| Existing/Proposed Existing | Window Type Various | Dampness None reported | Floor | None ☒ |
| Age (Yrs.) 1953 | Storm/Screens Yes | Settlement None reported | Outside Entry | Unknown ☐ |
| Effective Age (Yrs.) 25 yrs | Manufactured House No | Infestation None reported | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | N/A |
| Level 1 | | 1 | 1 | 1 | | | | 3 | 3 | X | | 3,301 |
| Level 2 | | | | | | | | | | | | |
| Level 3 | | | | | | | | | | | | |

Finished area above grade contains:       6 Rooms;       3 Bedroom(s);       3 Bath(s);       3,301 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | HW, Tile, Carpet | Type | Central | Refrigerator | ☒ | None | ☒ | Fireplace(s) # 1 | ☒ | None | ☐ |
| Walls | Plaster/Drywall | Fuel | Gas | Range/Oven | ☒ | Stairs | | Patio | | Garage | # of cars |
| Trim/Finish | Wood | Condition | Avg | Disposal | ☒ | Drop Stair | | Deck | | Attached | 2 cars |
| Bath Floor | Ceramic Tile | COOLING | | Dishwasher | ☒ | Scuttle | | Porch | | Detached | |
| Bath Wainscot | Ceramic Tile | Central | Yes | Fan/Hood | ☒ | Floor | | Fence | ☒ | Built-In | |
| Doors | Wood | Other | | Microwave | ☒ | Heated | | Pool | ☒ | Carport | 2 cars |
| Average/Average | | Condition | Avg | Washer/Dryer | ☒ | Finished | | | | Driveway | 6 cars |

Additional features (special energy efficient items, etc.):   None

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.:   Improvements were originally built in 1953 of average quality and have been maintained in average condition with minimal upgrades throughout the years. At appraisal date, improvements are assumed to be of average quality/condition. Based on an estimated life of 65 years & an effective age of 25 years, depreciation is calculated at 38.46%. See Attached Description Addendum.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property:   Sylmar is located within an earthquake fault zone.  The appraiser is not an expert in this field and refers the client to environmental/geological specialists if further information is required.  No warranties are given or implied.

| Freddie Mac Form 70 6/93 | PAGE 1 OF 2 | Fannie Mae Form 1004 6/93 |
|---|---|---|

Form UA2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## UNIFORM RESIDENTIAL APPRAISAL REPORT

13781 Eldridge
File No.  Aguilar

**Valuation Section**

| ESTIMATED SITE VALUE | $ 5,75 sf X 106,564 sf | = $ | 612,743 |
|---|---|---|---|

ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS:

| Dwelling | 3,301 Sq. Ft. @ $ 123.41 | = $ | 407,376 |
|---|---|---|---|
| | Sq. Ft. @ $ | = | |
| Additional Features | | | 15,000 |
| Garage/Carport 360 Sq. Ft. @ $ 25.00 | = | | 9,000 |
| Total Estimated Cost New | = $ | | 431,376 |
| Less | Physical | Functional | External |
| Depreciation | 165,907 | | = $ | 165,907 |
| Depreciated Value of Improvements | | = $ | 265,489 |
| "As-Is" Value of Site Improvements | | = $ | |
| INDICATED VALUE BY COST APPROACH | | = $ | 878,212 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property):   Cost for the subject was estimated through Marshall and Swift Valuation Services, discussions with builders in the area & the appraiser's cost files on similar quality/age homes.
Site estimated from market sales/extraction. Land to building ratio typical in area for older properties on larger lots.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| | 3781 Eldridge Avenue | 13337 Herrick Avenue | 13801 Gladstone Avenue | 13734 Polk Street |
| Address | 2503-019-029 TG 482/C2 | 2501-010-002 TG 481/H3 | 2504-008-006 TG 482/A2 | 2503-010-033 TG 482/B2 |
| Proximity to Subject | | 2.05 miles W | 0.77 miles W | 0.07 miles W |
| Sales Price | $ N/A | $ 800,000 | $ 795,000 | $ 820,000 |
| Price/Gross Living Area | $ | $ 427.12 | $ 625.00 | $ 248.48 |
| Date and/or | Inspection/PR | PR/MLS: SR15107048 | PR/MLS: 315002095 | PR/MLS: SR14217145 |
| Verification Source | Owner | Doc. No. 989182 | Doc. No. 675228 | Doc. No. 109282 |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(−)$ Adjust. | DESCRIPTION +(−)$ Adjust. | DESCRIPTION +(−)$ Adjust. |
| Sales or Financing | | 26% Dn, Conv 0 | 47% Dn, Conv 0 | 24% Dn, Conv 0 |
| Concessions | | None 0 | None 0 | None 0 |
| Date of Sale/Time | | 6/26/15 0 | 5/26/15 0 | 12/2/14 0 |
| Location | Average | Similar 0 | Similar 0 | Similar 0 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple 0 | Fee Simple 0 | Fee Simple 0 |
| Site | 106,564 sf | 108,216 sf 0 | 63,851 sf +64,070 | 34,859 sf +107,558 |
| View | None | Similar 0 | Similar 0 | Similar 0 |
| Design and Appeal | Ranch | Ranch 0 | Ranch 0 | Ranch 0 |
| Quality of Construction | Average | Similar 0 | Superior −25,000 | Superior −50,000 |
| Age | 1953 | 1953 0 | 1948 0 | 1937 0 |
| Condition | Average | Similar 0 | Superior −25,000 | Superior −25,000 |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | Total Bdrms Baths | Total Bdrms Baths |
| Room Count | 6 3 3 | 7 3 2 +5,000 | 4 2 2 +5,000 | 6 3 4 −5,000 |
| Gross Living Area | 3,301 Sq. Ft. | 1,873 Sq. Ft. +49,980 | 1,272 Sq. Ft. +71,015 | 3,300 Sq. Ft. 0 |
| Basement & Finished | N/A | Listed $850K | Listed $859K | Listed $950K |
| Rooms Below Grade | | DOM 7 −5.9% | DOM 59 −7.5% | DOM 106 −13.7% |
| Functional Utility | Average | Similar 0 | Similar 0 | Similar 0 |
| Heating/Cooling | Central HVAC | Central HVAC 0 | Central furnace +5,000 | Central HVAC 0 |
| Energy Efficient Items | None | None 0 | None 0 | None 0 |
| Garage/Carport | 2 garage | 2 garage 0 | 2 garage 0 | 4 garage −10,000 |
| Porch, Patio, Deck, Fireplace(s), etc. | 1 FP | 1 FP 0 | 1 FP 0 | 1 FP 0 |
| Fence, Pool, etc. | Pool | Inferior +10,000 | Pool 0 | Pool 0 |
| Additional features | None | Similar 0 | 8 Horse barns −35,000 | See Comments 0 |
| Net Adj. (total) | | ☒ + ☐ − $ 64,980 | ☒ + ☐ − $ 60,085 | ☒ + ☐ − $ 17,558 |
| Adjusted Sales Price of Comparable | | $ 864,980 | $ 855,085 | $ 837,558 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.):   Site area $1.50 sf; Quality/Condition $15K−$50K; ee factor; BA $5K; GLA $35/sf; Garage parking space, Central Air, Horse barns $5K each factor; Pool $10K. No. 4 is recent listing, adj 7.5%.
All sales, with adjustments, considered comparable to subject & given equal consideration.  Attached Description Addendum for further comments.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | None w/in past 36 months | None within past 12 months | None within past 12 months | None within past 12 months |
| | PR | PR | PR | PR |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:  Subject has not transferred w/in past 36 months, has not been listed for sale & is not in escrow at appraisal date. Unless noted, comparables have not transferred w/in 12 months of most recent sale.

| INDICATED VALUE BY SALES COMPARISON APPROACH | | $ 850,000 |
|---|---|---|
| INDICATED VALUE BY INCOME APPROACH (if Applicable)   Estimated Market Rent $ /Mo. x Gross Rent Multiplier | = $ | |

This appraisal is made ☒ "as is"  ☐ subject to the repairs, alterations, inspections or conditions listed below  ☐ subject to completion per plans & specifications.
Conditions of Appraisal:   This is a complete appraisal report to be used by the client/intended user for asset evaluation/possible bankruptcy purposes at appraisal date only. No other use is authorized.
Final Reconciliation:   Sales Comparison Approach is considered the most reliable indicator of value as it best reflects buyer/seller actions in subject market. Cost Approach is a less reliable indicator for older homes in current market. Income Approach is not applicable.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA form 1004B (Revised   2012   ).
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF   November 1, 2015
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $   850,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature | Signature |   ☐ Did  ☐ Did Not Inspect Property |
| Name  Elizabeth Eyerman | Name |
| Date Report Signed  November 6, 2015 | Date Report Signed |
| State Certification #  AG 010339      State CA | State Certification #      State |
| Or State License #      State | Or State License #      State |

Freddie Mac Form 70  6/93                PAGE 2 OF 2                Fannie Mae Form 1004 6-93

Form UA2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

4 2

## UNIFORM RESIDENTIAL APPRAISAL REPORT
## MARKET DATA ANALYSIS

These recent sales of properties are most similar and proximate to subject and have been considered in the market analysis. The description includes a dollar adjustment, reflecting market reaction to those items of significant variation between the subject and comparable properties. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the indicated value of the subject. If a significant item in the comparable is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the indicated value of the subject.

| ITEM | SUBJECT | COMPARABLE NO. | +(-)$ Adjust. | COMPARABLE NO. | +(-)$ Adjust. | COMPARABLE NO. 6 | +(-)$ Adjust. |
|---|---|---|---|---|---|---|---|
| Address | 3781 Eldridge Avenue 2503-010-029 TG 482/C2 | 13727 Gladstone Avenue 2504-008-015 TG 482/A2 | | | | | |
| Proximity to Subject | | 0.66 miles W | | | | | |
| Sales Price | $ N/A | $ 795,000 | | $ | | $ | |
| Price/Gross Living Area | $ | $ 415.36 | | $ | | $ | |
| Data and/or Verification Sources | Inspection/PR Owner | PR/MLS: SR15238856 N/A | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. |
| Sales or Financing Concessions | | Conventional None | 0 0 | | | | |
| Date of Sale/Time | | Current Listing | -59,625 | | | | |
| Location | Average | Similar | 0 | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | 0 | | | | |
| Site | 106,564 sf | 63,989 sf | +63,863 | | | | |
| View | None | Similar | 0 | | | | |
| Design and Appeal | Ranch | Cottage | 0 | | | | |
| Quality of Construction | Average | Superior | -15,000 | | | | |
| Age | 1953 | 1950 | 0 | | | | |
| Condition | Average | Superior | -15,000 | | | | |
| Above Grade | Total : Bdrms : Baths | Total : Bdrms : Baths | | Total : Bdrms : Baths | | Total : Bdrms : Baths | |
| Room Count | 6 : 3 : 3 | 6 : 4 : 2 | +5,000 | | | | |
| Gross Living Area | 3,301 Sq. Ft. | 1,914 Sq. Ft. | +48,545 | Sq. Ft. | | Sq. Ft. | |
| Basement & Finished Rooms Below Grade | N/A | Listed $795K DOM 2 | | | | | |
| Functional Utility | Average | Similar | 0 | | | | |
| Heating/Cooling | Central HVAC | Wall | +5,000 | | | | |
| Energy Efficient Items | None | None | 0 | | | | |
| Garage/Carport | 2 garage | 2 carport | +10,000 | | | | |
| Porch, Patio, Deck, Fireplace(s), etc. | 1 FP | Patio/Landscape 1 FP | -5,000 | | | | |
| Fence, Pool, etc. | Pool | Inferior | +10,000 | | | | |
| Additional features | None | See Comments | | | | | |
| Net Adj. (total) | | ☒ + ☐ - $ | 47,783 | ☐ + ☐ - $ | | ☐ + ☐ - $ | |
| Adjusted Sales Price of Comparable | | $ | 842,783 | $ | | $ | |
| Date, Price and Data Source for prior sales within year of appraisal | None w/in past 36 months PR | None within past 12 months PR | | | | | |

Comments: _____

Market Data Analysis 6-93

Comparable Sales Map

| Owner | Leonarda G. Aguilar | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 13781 Eldridge Ave | | | | | | |
| City | Sylmar | | County | Los Angeles | State | CA | Zip Code | 91342 |
| Client | Leonarda Aguilar c/o Jeffrey Shinbrot, Esq | | | | | | |



13781 Eldridge - Subject Plat Map

| Owner | Leonarda G. Aguilar | | | | |
|---|---|---|---|---|---|
| Property Address | 13781 Eldridge Ave | | | | |
| City | Sylmar | County | Los Angeles | State CA | Zip Code 91342 |
| Client | Leonarda Aguilar c/o Jeffrey Shinbrot, Esq | | | | |



Subject Photo Page

| Owner | Leonarda G. Aguilar | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 13781 Eldridge Ave | | | | | |
| City | Sylmar | | County Los Angeles | | State CA | Zip Code 91342 |
| Client | Leonarda Aguilar c/o Jeffrey Shinbrot, Esq. | | | | | |



**Subject Front**

| | |
|---|---|
| 3781 Eldridge Avenue | |
| Sales Price | N/A |
| G.L.A. | 3,301 |
| Tot. Rooms | 6 |
| Tot. Bedrms. | 3 |
| Tot. Bathrms. | 3 |
| Location | Average |
| View | None |
| Site | 106,564 sf |
| Quality | Average |
| Age | 1953 |



**Subject Street**

Comparable Photo Page

| Owner | Leonarda G. Aguilar | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 13781 Eldridge Ave | | | | | |
| City | Sylmar | County | Los Angeles | State | CA | Zip Code | 91342 |
| Client | Leonarda Aguilar c/o Jeffrey Shinbrot, Esq | | | | | |



### Comparable 1
13337 Herrick Avenue
| | |
|---|---|
| Proximity | 2.05 miles W |
| Sale Price | 800,000 |
| GLA | 1,873 |
| Total Rooms | 7 |
| Total Bedrms | 3 |
| Total Bathrms | 2 |
| Location | Similar |
| View | Similar |
| Site | 108,216 sf |
| Quality | Similar |
| Age | 1953 |



### Comparable 2
13801 Gladstone Avenue
| | |
|---|---|
| Proximity | 0.77 miles W |
| Sale Price | 795,000 |
| GLA | 1,272 |
| Total Rooms | 4 |
| Total Bedrms | 2 |
| Total Bathrms | 2 |
| Location | Similar |
| View | Similar |
| Site | 63,851 sf |
| Quality | Superior |
| Age | 1948 |



### Comparable 3
13734 Polk Street
| | |
|---|---|
| Proximity | 0.07 miles W |
| Sale Price | 820,000 |
| GLA | 3,300 |
| Total Rooms | 6 |
| Total Bedrms | 3 |
| Total Bathrms | 4 |
| Location | Similar |
| View | Similar |
| Site | 34,859 sf |
| Quality | Superior |
| Age | 1937 |

Comparable Photo Page

| Owner | Leonarda G. Aguilar | | | | |
|---|---|---|---|---|---|
| Property Address | 13781 Eldridge Ave | | | | |
| City | Sylmar | County  Los Angeles | State  CA | Zip Code  91342 |
| Client | Leonarda Aguilar c/o Jeffrey Shinbrot, Esq | | | | |



**Comparable 4**

13727 Gladstone Avenue
Prox. to Subj. 0.66 miles W
Sales Price    795,000
G.L.A.        1,914
Tot. Rooms    6
Tot. Bedrms.  4
Tot. Bathrms. 2
Location      Similar
View          Similar
Site          63,989 sf
Quality       Superior
Age           1950

Description Addendum                                              File No. Aguilar

| Owner | Leonarda G. Aguilar | | | | |
|---|---|---|---|---|---|
| Property Address | 13781 Eldridge Ave | | | | |
| City | Sylmar | County Los Angeles | State CA | Zip Code 91342 |
| Client | Leonarda Aguilar c/o Jeffrey Shinbrot, Esq | | | | |

The subject is located in the community of Sylmar in the northeast portion of the City of Los Angeles.

The City of Los Angeles recently adopted an Interim Sylmar Community Plan. The Plan will accommodate fewer residential units than the existing plan which was last updated in 1997. It increases land designated Open Space, Minimum and Very Low (minimum 17,500 sf lots) and limits future subdivision of lots in these areas. The Plan preserves equine-keeping lots and rural character and increases the proposed trail system. Land use and/or zone changes are intended to address future subdivisions by dividing the existing Low Residential category into Low I (RE9, RS), Very Low II (RE11-1, R1, RA-1-K, A1-1-K), and Low III (RD6).

DESCRIPTION OF IMPROVEMENTS

The subject is a Ranch-style 1-story 3BR/3BA single family residence originally constructed in 1953 of average quality materials and has been maintained in average condition/quality with minimal upgrades throughout the years. An exterior inspection was done and the gross living area (GLA) square footage is estimated from Public records which shows 3,301 sf.

The site is an interior, rectangle, 106,564 sf (2.45 acre) lot, zoned A1-1K which is a very low density residential designation, allowing one single family residence with accessory buildings and equestrian uses. There are no views.

The immediate area is developed with single family residences constructed in the mid-1900s.

The owner provided a description of the interior of the improvements and the appraiser has relied on this information. At appraisal date improvements include, but are not limited to, the following: Living room with FP and carpet floor; Kitchen with tile counter tops and tile flooring, 3 BAs with tile counter tops and tile flooring; 3 BRs with concrete floors (carpet removed); Laundry room with W/D. Some walls remain exposed after plumbing work.

There is a two-car attached garage, pool (in fair to average condition), two-car carport (in fair condition), accessory pole/flat roof structure in poor condition. There is a circular driveway with two curb cuts. Landscaping consists of mature palm trees and shrubs and is considered fair to average for the area.

The appraiser assumes the main improvements are of overall average quality and condition at appraisal date and require updating. The accessory building is uninhabitable and is not valued within the report. The carports are older, in need of replacement or major repairs and also are not considered in the valuation.

Page #14

Description Addendum

File No. Aguilar

| Owner | Leonarda G. Aguilar | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 13781 Eldridge Ave | | | | | |
| City | Sylmar | County | Los Angeles | State | CA | Zip Code | 91342 |
| Client | Leonarda Aguilar c/o Jeffrey Shinbrot, Esq | | | | | |

## COMPARABLE SALES

The following three sales and one listing are considered to be the most comparable to the subject in neighborhood location, site, GLA and age.  Sales with homes as large as the subject's 3,301 sf were scarce, as were sales of similar sized lot area.  All comps are inferior in either lot area and/or GLA and require larger gross adjustments.

Comp 1: 13337 Herrick Avenue- This is the most recent sale in subject area and consists of a smaller, 1-story, 1,873 sf 3BR/2BA Ranch-style SFR built in 1953 on a similar size 108,216 sf, 2.48 acre RA1-K lot.  Improvements consist of living room, converted BR, Kitchen with laminate counters and open to family room, double pane windows, two BAs with tile counters and floors, central furnace and AC, one FP, laundry room, carpet/laminate/vinyl tile flooring, 2-car attached garage, two driveway entrances.  Similar in site area, quality, condition, FP; Inferior in GLA, BAs, pool.

Comp 2: 13801 Gladstone Avenue - This is a recent sale in subject area and consists of a smaller, 1-story, 1,272 sf 2BR/2BA Ranch-style SFR built in 1946 on a smaller 63,851 sf RA1-K lot.  Improvements have been maintained in above average condition/quality with some upgrades throughout the years.  Improvements consist of living room with FP, kitchen, hardwood/carpet floors, laundry area,  pool, 8 horse barns with corral, 2-car attached garage, two driveway entrances.  There is no AC. Similar in location, parking, FP, pool; Superior in quality, condition, exterior amenities; Inferior in central AC, site area, GLA, BAs.

Comp 3: 13721 Polk Street- This is a sale in subject neighborhood and consists of a 2,389 sf, 3BR/2BA main house and a detached 1,000 sf 2BR/2BA accessory living space for a total of 3,389 sf of GLA.  Improvements were constructed in 2003 as a custom home on a smaller 34,859 sf RA1-K lot.  The rear of this site abuts the subject property.  Improvements are in good condition and of good quality and are wheel chair accessible.  Main house consists of cooks kitchen with granite counters open to family room with FP, living room, master suite, laundry room, attached 2-car garage; accessory quarters consist of kitchen, laundry facilities, patio, 2-car garage with workshop and 1/2 bath.  There is a pool, gated street entry with two driveways. There is central heat and AC and dual pane windows throughout.  Similar in location, overall GLA, central heat and AC, pool; Superior in quality, condition, BAs, parking; Inferior in site area.

Comp 4: 13727 Gladstone Avenue- This is a current listing in subject neighborhood and consists of a 1,082 sf, 2BR/1BA main house and a detached 832 sf 2BR/1BA accessory living space for a total of 1,914 sf of GLA.  Improvements were constructed in 1950 and are in above average condition/quality. Site is a 63,989 sf RA1-K lot.  Main house consists of living room with rock FP, formal dining room with bow window, dual pane windows; accessory quarters has a kitchenette.  There is a detached 2-car carport, concrete patio, asphalt paved driveway, 2 driveway entrances and good landscaping.  Similar in location, FP; Inferior in site area, quality, condition, GLA, central heat and AC, parking, pool; Superior in patio, landscaping and listing status.

Page #15

Additional Underlying Assumptions                          File No. Aguilar

| Owner | Leonarda G. Aguilar | | | | |
|---|---|---|---|---|---|
| Property Address | 13781 Eldridge Ave | | | | |
| City | Sylmar | County  Los Angeles | State  CA | Zip Code  91342 |
| Client | Leonarda Aguilar c/o Jeffrey Shinbrot, Esq | | | | |

1.   The appraiser certifies that, to the best of his knowledge and belief, the statements contained in this appraisal, subject to the assumptions and limiting conditions set forth below are correct.

2.   Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser or the firm with which he is connected) shall be disseminated to the public through advertising media, public relations media, news media or any other public means of communication without the prior written consent and approval of the undersigned.

3.   The appraiser herein, by reason of this report, is not required to give testimony in court, with reference to the property herein appraised, unless arrangements have been previously made therefore.

4.   This property has been appraised as though free of liens and encumbrances, in responsible ownership and under competent and aggressive management.

5.   No responsibility is to be assumed for matters legal in nature, nor is any opinion of title rendered herewith.  Good title is assumed.  The legal description and dimensions were furnished from sources thought to be authoritative; however, no responsibility is assumed for either.

6.   The compensation for making this appraisal is in no manner contingent upon the value reported.

7.   That the date of value to which the conclusions and opinions expressed in this report apply, is set forth in the letter of transmittal.  Further, that the dollar amount of any value opinion herein rendered is based upon the purchasing power of the American dollar existing on that date.

8.   The appraiser assumes no responsibility for economic or physical factors which may affect the opinions herein stated occurring at some date after the date of the letter transmitting this report. The appraiser reserves the right to make such adjustments to the valuation herein reported as may be required by consideration of additional data or more reliable data that may become available.

9.   Maps, plats and exhibits included herein are for illustration only as an aid in visualizing matters discussed within the report.  They should not be considered as surveys or relied upon for any other purpose.

10.  No opinion is expressed as to the value of subsurface oil, gas, or mineral rights or whether the property is subject to surface entry for the exploration or removal of such materials except as is expressly stated.  It is assumed that there are no hidden or unapparent conditions of the property, subsoil, or structure that render it more or less valuable.  No responsibility is assumed for such conditions or for arranging for engineering studies that may be required to discover them.

11.  No opinion is intended to be expressed for matters which require legal expertise or specialized investigation or knowledge beyond that customarily employed by real estate appraisers.

12.  The United States Consumer Product Safety Commission (CPSC) has banned the future sale of Urea Formaldehyde Insulation (UFFI), having determined that such insulation can present an unreasonable health risk to those exposed to it.  The presence or absence of UFFI in this property has not been established.  If UFFI is present, this appraisal is null and void.

13.  It is assumed that full compliance with all applicable federal, state, and local environmental regulations and laws unless noncompliance is stated, defined, and considered in the appraisal report.  It is assumed that all required licenses, certificates of occupancy, consents or other legislative or administrative authority from any local, state, or national government or private entity or organization have been or can be obtained or renewed for any use on which the value estimate contained in this report is based.

14.  The distribution, if any, of the total valuation in this report between land and improvements applies only under the stated program of utilization.  The separate allocations for land and buildings must not be used in conjunction with any other appraisal and are invalid if so used.

Additional Underlying Assumptions                               File No. Aguilar

| Owner | Leonarda G. Aguilar | | | | |
| Property Address | 13781 Eldridge Ave | | | | |
| City | Sylmar | County Los Angeles | State CA | Zip Code 91342 |
| Client | Leonarda Aguilar c/o Jeffrey Shinbrot, Esq | | | | |

15. The appraiser is not aware of any geological problems but assumes no responsibility for matters of a seismic or geological nature.

16. Unless otherwise stated in this report, the existence of hazardous material, which may or may not be present on the property, was not observed by the appraiser. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. Contamination can be a result of manmade or naturally occurring elements within the environment or a combination of both. Radon and mold are examples of naturally occurring contaminants, whereas manmade sources may include lead, PCBs, asbestos, UFFI, electromagnetic radiation (EMF), hydrocarbons from leaking underground storage tanks, waste sites (landfills), noise and odors. The presence of these substances may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required to discover them. The client is urged to retain an expert in this field, if desired. In the event hazardous substances are shown to be present in or on the subject property, the appraiser reserves the right to alter his opinion of value.

17. The Americans with Disabilities Act (ADA) became effective January 26, 1992. The appraiser has not made a specific compliance survey and analysis of the subject property nor reviewed such a survey to determine conformity with the various detailed requirements of the ADA. Should it be determined that the subject is in noncompliance with the requirements of the ADA, the appraiser reserves the right to alter his opinion of value.

18. Acceptance of and/or use of this appraisal report by the client or any third party constitutes acceptance of all limiting conditions. The appraiser's liability extends only to the stated client, not subsequent parties or users, and is limited to the amount of fee received by the appraiser. Further, there is no accountability, obligation or liability to any third party. If the appraisal report is placed in the hands of anyone other than the client for whom it was prepared, the client shall make such party and/or parties aware of all limiting conditions and assumptions of the assignment and related discussions.

19. If the client or any third party brings legal action against the appraiser and/or the signers of this report and the appraiser prevails, the initiating party of such legal action shall reimburse the appraisers for any and all costs of any nature, including attorney's fees, incurred in their defense.

20. The appraiser affirms that the written appraisal report conforms and is in compliance with the Uniform Standards of Professional Appraisal Practice.

Appraiser's Qualifications

| | | | | File No. Aguilar |
|---|---|---|---|---|
| Owner | Leonarda G. Aguilar | | | |
| Property Address | 13781 Eldridge Ave | | | |
| City | Sylmar | County  Los Angeles | State  CA | Zip Code  91342 |
| Client | Leonarda Aguilar c/o Jeffrey Shinbrot, Esq | | | |

## APPRAISAL QUALIFICATIONS

Elizabeth Eyerman

**Address:**        12203 Texas Avenue,  Los Angeles, CA  90025
(310) 207-4571  Fax: (310) 207-4581
Email: elizaeve@mindspring.com

**Present:**        Independent fee appraiser specializing in commercial/industrial, single and multi-family residential real estate valuations

**Appraisal Experience:**   Principal, Real Estate Appraisals, Los Angeles, CA
Appraiser, Ashby Appraisals, Santa Monica, CA
Appraiser, James E. Kavanaugh, MAI, Dana Point, CA
Appraiser, PAL Appraisal, Northridge, CA

Valuation of all types of commercial and residential properties including vacant land, multi-family residential, condominiums, industrial, office, retail, medical/ veterinary buildings, shopping centers, restaurants, alternate use values, parking lots and day care centers. Additional experience includes appraisal of proposed construction, leaseholds, leased fee, partial interests, residential estates, lease and income analysis and sale projections.

**Geographic Area:**     Los Angeles, Orange, Riverside, San Bernardino and Ventura counties.

**Additional Experience:**  Property management of both commercial and multi-family developments.

**Education:**        <u>Appraisal Institute</u>

Classes & seminars include but are not limited to: Real Estate Appraisal Principles; Basic Valuation Procedures; Capitalization Techniques, A & B; Analysis of Leased Fee Interests; Case Studies in Real Estate Valuation; Complex Residential Properties; Appraising Apartments in S Calif; Environmental; Non-Conforming Uses; MLS for Appraisers; FHA & the Appraisal Process; Real Estate Fraud; Lease Abstracting & Analysis; Completing the URAR Form; Yellow Book Seminar (Land & Parks); Business Practices & Ethics; Appraising Exceptional Homes; Trends in Land Use Regulation; USPAP (current)

<u>California State University, Northridge</u> - BA

**Professional Affiliations:**  Certified General Real Estate Appraiser,  CA AG010339, Expires 12/14/16
Member of MLS
FHA Approved Appraiser

12/14

**EXHIBIT C**

EXHIBIT C – LIST OF GENERAL UNSECURED CLAIMS

| | | | | SCHEDULED CLAIMS | | FILED CLAIMS | |
|---|---|---|---|---|---|---|---|
| **CLASSIFIED CLAIMS: UNSECURED CLAIMS** | | | | | | | |
| Class | Name | Insider | Impaired | Amount | D/C/U* | Amount | Objection |
| 3 | Asset Acceptance LLC | N | Y | 625.02 | | 498.88 | N |
| 3 | Cach, LLC | N | Y | 7,216.00 | | | N |
| 3 | Cain And Weiner | N | Y | 146.00 | | | N |
| 3 | Capital One Bank | N | Y | 6,209.58 | | | N |
| 3 | Credit Protection Association | N | Y | 416.00 | | | N |
| 3 | Edelmira Estrada | N | Y | 0.00 | | 0.00 | N |
| 3 | Paula A. Wyatt, Esq. | N | Y | 0.00 | | | N |
| 3 | Financial Credit Network | N | Y | 162.00 | | | N |
| 3 | Grant & Weber | N | Y | 79.00 | | | N |
| 3 | Herbert P. Sears Collection Agency | N | Y | 61.00 | | | N |
| 3 | Jilbert Tahmazaian, Esq. | N | Y | 4,300.00 | | | N |
| 3 | Marshack Medical MSO | N | Y | 830.00 | | | N |
| 3 | Midland Funding, LLC | N | Y | 114.71 | | | N |
| 3 | Pacific Gas & Electricity | N | Y | 430.00 | | | N |

| 3 | Progressive Management System | N | Y | 472.00 | | | N |
|---|---|---|---|---|---|---|---|
| 3 | So. Calif. Edison | N | Y | 84.00 | | | N |
| 3 | Tsi/980 | N | Y | 389.00 | | | N |
| 3 | WFNNB-The Avenue | N | Y | 489.00 | | | N |
| 3 | DIRECTV, LLC | N | Y | 0.00 | | 422.87 | N |
| **TOTAL AMOUNT FOR CLASS** | | | | 22,023.31 | | 921.75 | TOTAL ALLOWED = $22,320.04 |

* Disputed/contingent/unliquidated

**EXHIBIT D**

Español | Tiếng Việt | 한국어 | 中文 | հայերեն



Search



THE SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

| Home | Online Services | Forms & Filings | Self-Help | Divisions | Jury | General Info |
|------|----------------|----------------|-----------|-----------|------|--------------|
| | Pay Fines, Search Records... | Forms, Filing Fees... | Self-Rep, Info, FAQs... | Civil, Criminal, Family... | Jury Duty Portal, Q&A... | Courthouses, ADA, Local Rules... |

ONLINE SERVICES

# Case Summary

## CASE SUMMARY

PRINT | NEW SEARCH

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

Case Number: BC544185
EDELMIRA ESTRADA VS LEONARDA G AGUILAR

Filing Date: 04/29/2014
Case Type: Other PI/PD/WD (General Jurisdiction)
Status: Dismissed - Other 10/29/2015

### Future Hearings

None

Documents Filed | Proceeding Information

### Parties

AGUILAR LEONARDA G. - Defendant & Defendant in Pro Per

DOES 1 THROUGH 50 - Defendant/Respondent

ESTRADA EDELMIRA - Plaintiff/Petitioner

KIESEL LAW LLP - Attorney for Plaintiff/Petitioner

WYATT LAW FIRM LTD. - Attorney for Plaintiff/Petitioner

Case Information | Party Information | Proceeding Information

### Documents Filed (Filing dates listed in descending order)

10/19/2015 Proof of Service (OF ORDER GRANTING ATTY'S MOTIO TO BE RELIEVED AS COUNSEL )
Filed by Attorney for Plaintiff/Petitioner

09/21/2015 Order (RE: MOTION OF COUNSEL, KIESEL LAW LLP AND THE WYATT LAW FIRM, LTD., TO BE RELIEVED AS COUNSEL )
Filed by Clerk

09/21/2015 Order (GRANTING ATTORNEY'S MOTION TO BE RELIEVED AS COUNSEL-CIVIL )
Filed by Attorney for Plaintiff/Petitioner

08/25/2015 Motion to be Relieved as Counsel
Filed by Attorney for Plaintiff/Petitioner

12/04/2014 Order (RE: DEFENDANT LEONARDO G. AGUILAR'S EX PARTE APPLICATION TO STAY THE CIVIL ACTION PENDING THE OUTCOME OF THE CRIMINAL ACTION )
Filed by Judge

12/04/2014 Reply/Response
Filed by Defendant & Defendant in Pro Per

12/02/2014 Notice
Filed by Defendant & Defendant in Pro Per

12/02/2014 Reply/Response
Filed by Defendant & Defendant in Pro Per

12/01/2014 Request-Informal Discovery Conf-PI
Filed by Attorney for Plaintiff/Petitioner

11/04/2014 Ex-Parte Application (TO STAY THE CIVIL ACTION PENDING THE OUTCOME OF THE CRIMINAL
ACTION; )
Filed by Attorney for Defendant/Respondent

11/04/2014 Opposition Document (TO DEFENDANTS' EX PARTE APPL. FOR A STAY OF CIVIL PROCEEDINGS )
Filed by Attorney for Plaintiff/Petitioner

09/30/2014 Notice (OF INFORMAL DISCOVERY CONFERENCE )
Filed by Attorney for Pltf/Petnr

06/12/2014 Answer to Complaint
Filed by Defendant & Defendant in Pro Per

05/19/2014 Proof-Service/Summons
Filed by Attorney for Plaintiff/Petitioner

04/29/2014 Complaint

Case Information | Party Information | Documents Filed

Proceedings Held (Proceeding dates listed in descending order)

10/29/2015 at 08:30 am in Department 93, Howard L. Halm, Presiding
Trial - Case Dismissed/Disposed

10/13/2015 at 10:00 am in Department 93, Howard L. Halm, Presiding
Final Status Conference - No Appearance

09/21/2015 at 01:30 pm in Department 93, Howard L. Halm, Presiding
Motion to be Relieved as Counsel - Granted

12/04/2014 at 01:30 am in Department 93, Gail Feuer, Presiding
Exparte proceeding (CONT. FROM 11/04/14) - Denied without prejudice

12/01/2014 at 03:30 pm in Department 93, Gail Feuer, Presiding
Informal Discovery Conference-PI - Completed

11/05/2014 at 03:30 pm in Department 93, Gail Feuer, Presiding
Informal Discovery Conference-PI (CONTINUED TO 12/01/14, BY EX PARTE) - Advanced to a Previous Date

11/04/2014 at 08:30 am in Department 93, Gail Feuer, Presiding
Exparte proceeding - Continued by Court

Case Information | Party Information | Documents Filed | Proceeding Information

NEW SEARCH

Art Showcased in
Los Angeles Courthouse Jury Rooms

http://www.lacourt.org/casesummary/ui/casesummary.aspx?                                        2/5/2016

**EXHIBIT E**

1  LAW OFFICES OF LES ZIEVE
    Brian H. Tran, Esq. #255577
2  Leslie M. Klott, Esq. #279622
3  30 Corporate Park, Suite 450
    Irvine, CA 92606
4  Phone:     (714) 848-7920
    Facsimile:  (714) 908-7807
5  Email:     bankruptcy@zievelaw.com

6  Attorneys for Secured Creditor, HSBC Bank USA, N.A., as Trustee on behalf of ACE Securities
7  Corp. Home Equity Loan Trust and for the registered holders of ACE Securities Corp. Home
    Equity Loan Trust, Series 2006-ASAP5, Asset Backed Pass-Through Certificates c/o Ocwen
8  Loan Servicing, LLC

9

10              UNITED STATES BANKRUPTCY COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12               LOS ANGELES DIVISION

13

14  In re:                         Case No.: 2:15-bk-16443-RN

15  Leonarda Guadalupe Aguilar,

16              Debtor.    Chapter: 11

                            STIPULATION BY AND BETWEEN
17                            SECURED CREDITOR AND DEBTOR TO
                            RESOLVE PLAN TREATMENT OF
18                            SECURED CREDITOR'S CLAIM

19                            <u>Confirmation Hearing:</u>
                            Date:   Not yet set
20                            Time:   Not yet set
                            Place:  Courtroom 1645
21                                        U.S. Bankruptcy Court
                                      255 E. Temple Street
22                                      Los Angeles, CA 90012

23

24

25

26        TO THE HONORABLE RICHARD M. NEITER, UNITED STATES

27  BANKRUPTCY JUDGE, DEBTOR, DEBTOR'S ATTORNEY, THE UNITED STATES

    TRUSTEE, AND PARTIES IN INTEREST:
28

                                      1

1

2          HSBC Bank USA, N.A., as Trustee on behalf of ACE Securities Corp. Home Equity

3     Loan Trust and for the registered holders of ACE Securities Corp. Home Equity Loan Trust,

4     Series 2006-ASAP5, Asset Backed Pass-Through Certificates c/o Ocwen Loan Servicing, LLC

5     ("Secured Creditor"), by and through its counsel of record, and Leonarda Guadalupe Aguilar

6     ("Debtor"), by and through his counsel of record (collectively "Parties"), hereby agree and

7     stipulate to resolve the plan treatment of Secured Creditor's claim related to real property located

8     at 13781 Eldridge Avenue, Sylmar, CA 91342 as follows:

                        RECITALS

9          1.    On or about April 25, 2006, Debtor, for valuable consideration, made, executed

10    and delivered a Note secured by a Deed of Trust in the amount of $950,000.00 ("Note") on the

11    property commonly known as 13781 Eldridge Avenue, Sylmar, CA 91342 ("Real Property").

12         2.    On April 23, 2015, Debtor filed a voluntary petition for relief under Chapter 11 of

13    the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California,

14    Los Angeles Division and was assigned Case No. 2:15-bk-16443-RN.

15         3.    On August 17, 2015, Secured Creditor filed Proof of Claim no. 5 reflecting a total

16    claim of $1,393,670.51 with $492,799.90 in pre-petition arrears.

17         THE PARTIES HEREBY STIPULATE AND AGREE AS FOLLOWS:

18         1.    The Real Property shall be valued at $850,000.00.

19         2.    Secured Creditor shall have a fully secured claim in the amount of $850,000.00

20    which will be repaid over 246 months beginning December 1, 2015 and continuing until June 1,

21    2036 on which date a balloon payment of the remaining amount under the loan will be due. The

22    loan shall be repaid in equal monthly installments calculated by amortizing the loan over 30

23    years at 4.25% fixed interest. The monthly principal and interest payment shall be $4,181.49.

24    The loan shall remain escrowed. The unsecured portion of the claim shall be paid in accordance

25    with the unsecured claims under the Plan. All other terms of the Note and Deed of Trust signed

26    by the Debtor and currently held by Secured Creditor shall continue in full force and effect, and

27

28

                        2

those documents shall only be modified with regard to the monthly payment amount, the interest rate, and the maturity date of the Note.

3. The terms of this stipulation are expressly contingent upon the confirmation of a Chapter 11 Plan by the Debtor, and substantial consummation thereof. In the event this case is dismissed or converted to Chapter 7, Secured Creditor shall retain its lien in the full amount due under the Note and Deed of Trust without regard to the bifurcation of Secured Creditor's claim into secured and unsecured claims under this stipulation. It is the intent of Debtor and Secured Creditor that these terms govern the claim of Secured Creditor and the Debtor will incorporate these terms into any order confirming this or any subsequent plan. In the event of a discrepancy between this stipulation and the terms of any confirm plan, the provisions of this stipulation shall control.

4. In the event Debtor fails or neglects to timely make a post-petition payment pursuant to the terms of this stipulation prior to confirmation of the Chapter 11 Plan, Secured Creditor (and/or its servicer) shall provide written notice to the Debtor and to Debtor's attorneys of record, indicating the nature of the default. If the Debtor fails to cure the default or payment default with certified funds after the passage of thirty (30) calendar days from the date said written notice is placed in the mail as reflected on the certified receipt, Secured Creditor may file and serve a Declaration of Default along with an Order for Relief from the Automatic Stay to be lodged by Secured Creditor for entry by the Court, unless it has already been terminated by operation of law, and Secured Creditor (and/or its servicer) may proceed to foreclose its security interest in the Real Property under the terms of the Loan and applicable state law and thereafter commence any action necessary to obtain complete possession of the Real Property without further notice, order, or proceeding of this Court.

5. The automatic stay of 11 USC §362(a) shall terminate as to Secured Creditor, its successors and assigns, upon the entry of an Order confirming a Chapter 11 plan in this case.

6. The provisions of this stipulation shall be binding upon and inure to the benefit of

3

Secured Creditor, the Debtor and reorganized Debtor, and the respective successors and assigns of each.

7.    The provisions of this stipulation shall be controlling and incorporated into any Chapter 11 Plan or Amended Chapter 11 filed by Debtor and Secured Creditor shall be paid through Debtor's Chapter 11 Plan pursuant to this stipulation.

8.    Secured Creditor will accept any plan that conforms to the above terms, and will execute and return a ballot to the Debtor's counsel in accordance therewith. In lieu of ballot this stipulation may be submitted as acceptance of the plan.

WHEREFORE, the Parties do respectfully request the Court enter an order approving this Stipulation.

IT IS SO STIPULATED:
Dated: November 15, 2015

LAW OFFICES OF LES ZIEVE

Leslie M. Klott
Attorney for Secured Creditor, HSBC Bank USA,
N.A., as Trustee on  behalf of ACE Securities
Corp. Home Equity Loan Trust and for the
registered holders of ACE Securities Corp. Home
Equity Loan Trust, Series 2006-ASAP5, Asset
Backed  Pass-Through Certificates c/o Ocwen Loan
Servicing, LLC

Dated: November ___, 2015

THE SHINBROT FIRM

Jeffrey S. Shinbrot, Attorney for Debtor,
Leonarda Guadalupe Aguilar

4

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
30 Corporate Park, Suite 450
Irvine, CA 92606

A true and correct copy of the foregoing document entitled (*specify*): **STIPULATION BY AND BETWEEN SECURED CREDITOR AND DEBTOR TO RESOLVE PLAN TREATMENT OF SECURED CREDITOR'S CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **December 21, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Jeffrey S Shinbrot, Attorney                 jeffrey@shinbrotfirm.com
Kenneth G Lau, Attorney                      kenneth.g.lau@usdoj.gov
Kelly L Morrison, Attorney                   kelly.l.morrison@usdoj.gov
United States Trustee (LA)                   ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **December 22, 2015**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

DEBTOR                                   PRESIDING JUDGE
Jeffrey S Shinbrot                       United States Bankruptcy Court
The Shinbrot Firm                        Chambers of Honorable Richard M. Neiter
8200 Wilshire Blvd, Ste 400              255 E. Temple Street, Suite 1652
Beverly Hills, CA 90211                  Los Angeles, CA 90012-3332

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 21, 2015 | Michele Dapello | /s/ Michele Dapello |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                    F 9013-3.1.PROOF.SERVICE

1  LAW OFFICES OF LES ZIEVE
   Brian H. Tran, Esq. #255577
2  Leslie M. Klott, Esq. #279622
   30 Corporate Park, Suite 450
3  Irvine, CA 92606
4  Phone:      (714) 848-7920
   Facsimile:   (714) 908-7807
5  Email:       bankruptcy@zievelaw.com

FILED & ENTERED

DEC 29 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jabun   DEPUTY CLERK

6  Attorneys for Secured Creditor, HSBC Bank USA, N.A., as Trustee on behalf of ACE Securities
7  Corp. Home Equity Loan Trust and for the registered holders of ACE Securities Corp. Home
   Equity Loan Trust, Series 2006-ASAP5, Asset Backed Pass-Through Certificates c/o Ocwen
8  Loan Servicing, LLC

9

10

11              UNITED STATES BANKRUPTCY COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                   LOS ANGELES DIVISION

14

15  In re:                               Case No.: 2:15-bk-16443-RN

16  Leonarda Guadalupe Aguilar,

17                Debtor.                 Chapter: 11

18                                        ORDER GRANTING STIPULATION BY
                                          AND BETWEEN SECURED CREDITOR
19                                        AND DEBTOR TO RESOLVE PLAN
                                          TREATMENT OF SECURED
20                                        CREDITOR'S CLAIM

21                                        Confirmation Hearing:
                                          Date:   Not yet set
22                                        Time:   Not yet set
                                          Place:  Courtroom 1645
23                                                U.S. Bankruptcy Court
                                                  255 E. Temple Street
24                                                Los Angeles, CA 90012

25  ///

26  ///

27  ///

28

                            1

Case 2:15-bk-16443-RN    Doc 72    Filed 12/29/15    Entered 12/29/15 13:32:50    Desc
Main Document    Page 2 of 2

1

2       The Court, having considered the Stipulation by and between HSBC Bank USA, N.A., as

3   Trustee on behalf of ACE Securities Corp. Home Equity Loan Trust and for the registered

4   holders of ACE Securities Corp. Home Equity Loan Trust, Series 2006-ASAP5, Asset Backed

5   Pass-Through Certificates c/o Ocwen Loan Servicing, LLC ("Secured Creditor"), and Leonarda

6   Guadalupe Aguilar ("Debtor") to Resolve Plan Treatment of Secured Creditor's Claim

7   ("Stipulation") executed by the parties and filed on December 21, 2015 as docket no. 69, the

8   Court hereby makes its Order as follows:

9       IT IS ORDERED that the Stipulation is approved.

10                                          ###

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Date: December 29, 2015

25                                      Richard M. Neiter
                                        United States Bankruptcy Judge
26

27

28

                                            2