JEFFREY S. SHINBROT, ESQ.
(SBN 155486)
jeffrey@shinbrotfirm.com
JEFFREY S. SHINBROT, APLC
8200 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone:  (310) 659-5444
Fax (310) 878-8304

Attorneys for Chapter 11 Debtor
Leonarda Guadalupe Aguilar

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LEONARDA GUADALUPE AGUILAR,<br><br>Debtor and Debtor-in-Possession. | Bk. No. 2:15-bk-16443-RN<br><br>In a Case Under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 *et seq.*)<br><br>SECOND ~~FIRST~~ AMENDED DISCLOSURE STATEMENT DESCRIBING ~~FIRST~~ SECOND AMENDED CHAPTER 11 PLAN |

Court

Disclosure Statement Hearing

Date:   March 31, 2016~~To Be Set By the~~

Time:   2:00–_____
Ctrm:   1645
Court Address:  255 East Temple St.,
Los Angeles, CA 90012

Plan Confirmation Hearing

Date:   June 9, 2016~~To Be Set By the Court~~
Time:   2:00 p.m.
Ctrm:   1645
Court Address:  255 East Temple St.,
Los Angeles, CA 90012

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

    A.   Purpose of This Document ............................................................................. 1

    B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ....................... 2

        1.   Time and Place of the Confirmation Hearing ............................................ 2

        2.   Deadline for Voting For or Against the Plan ............................................. 3

        3.   Deadline for Objecting to the Confirmation of the Plan .............................. 3

        4.   Identity of Person to Contact for More Information Regarding the Plan .................... 3

    C.   Disclaimer ....................................................................................................... 3

II. BACKGROUND ............................................................................................................... 4

    A.   Description and History of the Debtor's Business ......................................... 4

    B.   Principals/Affiliates of Debtor's Business ..................................................... 4

    C.   Management of the Debtor Before and After the Bankruptcy .......................... 4

    D.   Events Leading to Chapter 11 Filing ............................................................. 4

    E.   Significant Events During the Bankruptcy ..................................................... 4

        1.   Bankruptcy Proceedings ........................................................................... 4

        2.   Other Legal Proceedings .......................................................................... 5

        3.   Actual and Projected Recovery of Preferential or Fraudulent Transfers (29) .............. 6

        4.   Procedures Implemented to Resolve Financial Problems ........................... 6

        5.   Current and Historical Financial Conditions ............................................. 6

III. SUMMARY OF THE PLAN OF REORGANIZATION ............................................... 7

    A.   What Creditors and Interest Holders Will Receive Under the Proposed Plan .................. 7

    B.   Unclassified Claims ....................................................................................... 7

        1.   Administrative Expenses ........................................................................... 7

        2.   Priority Tax Claims ................................................................................... 8

2

C.    Classified Claims and Interests ................................................................. 10~~109~~

    1.    Classes of Secured Claims ...................................................... 10~~109~~

    2.    Classes of Priority Unsecured Claims ................................................. 12

    3.    Class of General Unsecured Claims .................................................. 12

    4.    Class(es) of Interest Holders ........................................................ 13

D.    Means of Effectuating the Plan ................................................................ 14

    1.    Funding for the Plan ................................................................ 14

    2.    Post-Confirmation Management ..................................................... 14

    3.    Disbursing Agent ................................................................... 14

E.    Risk Factors ................................................................................. 14

F.    Other Provisions of the Plan .................................................................. 15~~1514~~

    1.    Executory Contracts and Unexpired Leases ........................................ 15~~1514~~

        a.    Assumptions ................................................................. 15~~1514~~

        b.    Rejections ................................................................... 15~~1514~~

    2.    Changes in Rates Subject to Regulatory Commission Approval .................... 15~~1514~~

    3.    Retention of Jurisdiction ......................................................... 15~~1514~~

G.    Tax Consequences of Plan .................................................................... 15

IV. CONFIRMATION REQUIREMENTS AND PROCEDURES ...................................... 16~~1615~~

A.    Who May Vote or Object ..................................................................... 16

    1.    Who May Object to the Confirmation of the Plan .................................... 16

    2.    Who May Vote to Accept/Reject the Plan ........................................... 16

        a.    What is an Allowed Claim/Interest ............................................. 16

        b.    What is an Impaired Claim/Interest ........................................... 17~~1716~~

    3.    Who is <u>Not</u> Entitled to Vote ..................................................... 17

    4.    Who Can Vote in More Than One Class ............................................ 18~~1817~~

~~First~~ <u>Second</u> Amended Disclosure Statement Describing <u>Second Amended</u> Chapter 11 Plan

     5.     Votes Necessary to Confirm the Plan ................................................ 18~~1817~~

     6.     Votes Necessary for a Class to Accept the Plan ...................................... 18

     7.     Treatment of Nonaccepting Classes ...................................................... 18

     8.     Request for Confirmation Despite Nonacceptance by Impaired Class(es) ........ 19~~1918~~

  B.    Liquidation Analysis ................................................................ 19

  C.    Feasibility ............................................................................ 22

V. EFFECT OF THE CONFIRMATION OF PLAN ........................................... 24~~2425~~

  A.    Discharge (105) ...................................................................... 24~~2425~~

  B.    Revesting of Property in the Debtor ............................................... 24~~2425~~

  C.    Modification of Plan ................................................................ 24~~2425~~

  D.    Post-Confirmation Status Report ................................................. 24~~2425~~

  E.    Quarterly Fees ...................................................................... 24~~2425~~

  F.    Post-Confirmation Conversion/Dismissal ....................................... 25~~2526~~

  G.    Final Decree .......................................................................... 25~~2526~~

VI. SUPPORTING DECLARATIONS ..................................................... 26~~2627~~

EXHIBIT A – LIST OF ALL ASSETS ...................................................... 29~~32~~

EXHIBIT B – APPRAISAL ................................................................ 30~~36~~

EXHIBIT C – GENERAL UNSECURED CLAIMS ....................................... 54

EXHIBIT D-ESTRADA vs. AGUILAR DOCKET……………………………………….56

EXHIBIT E-STIPULATION AND ORDER APPROVING………………………………...58

# I.

# INTRODUCTION

LEONARDA GUADALUPE AGUILAR ("Debtor" or "Proponent") is the Debtor in a Chapter 11 bankruptcy case.  On April 23, 2015, Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 *et seq*., Chapter 11 allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan").  The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtor is the party proposing the Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganizing plan which includes a Court approved agreement regarding the treatment of the Debtor's principal secured creditor, HSBC Bank, as set forth herein.  In other words, the Proponent seeks to accomplish payments under the Plan by consensually restructuring the debt to HSBC Bank, which is secured by the Debtor's real property located at 13781 Eldridge Avenue, Sylmar, California ("Sylmar Property"), and paying other creditors as set forth herein over time.  The Effective Date of the proposed Plan is 14 days after entry of an order confirming the Plan.

## A.    Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

(1)    **WHO CAN VOTE OR OBJECT,**

(2)    **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN**

1

LIQUIDATION,

**(3)     THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS**

**DURING THE BANKRUPTCY,**

**(4)     WHAT THINGS THE COURT WILL LOOK AT TO DECIDE**

**WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)     WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)     WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  Any party can now solicit votes for or against the Plan.

**B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.     Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on June 9, 2016———, at 2:00 ——— p.m. {A.M./P.M.} *(This date will be provided by the Court at the hearing where the Court approves the Disclosure Statement)*, in Courtroom 1645, Edward R. Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los

First Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

Angeles, CA 90012.

**2.      Deadline for Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Jeffrey S. Shinbrot, Esq., JEFFREY S. SHINBROT, APLC, 8200 Wilshire Boulevard, Suite 400, Beverly Hills, California 90211, telephone (310) 659-5444, facsimile (310) 878-8304.

Your ballot must be received by May 13, 2016—————— or it will not be counted.

**3.      Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon Jeffrey S. Shinbrot, Esq., JEFFREY S. SHINBROT, APLC, 8200 Wilshire Boulevard, Suite 400, Beverly Hills, California 90211, telephone (310) 659-5444, facsimile (310) 878-8304 by May 13, 2016——————————.

**4.      Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Jeffrey S. Shinbrot, Esq., JEFFREY S. SHINBROT, APLC, 8200 Wilshire Boulevard, Suite 400, Beverly Hills, California 90211, telephone (310) 659-5444, facsimile (310) 878-8304.

**C.      Disclaimer**

The financial data relied upon in formulating the Plan is based on the Debtor's books and records, projections calculated based on the Debtor's records, and appraisals of Debtor's property.  The information contained in this Disclosure Statement is provided by the Debtor based on information in her possession and third party appraisers.  The Debtor represents that everything stated in the Disclosure Statement is true to the Debtor's best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

///

///

///

///

## II.

## BACKGROUND

**A.    Description and History of the Debtor's Business**

      The debtor is an individual.  The Debtor left her employment due to medical disability but has now returned to work as of June 30, 2015 at the Employment Development Department. The Debtor receives approximately $1,750.00 (net pay) a month in income from this employment.  In addition, Debtor shallexpects to receive $5,000.00 per month as rent from her brother Vicente Aguilar who occupies the Sylmar property.  As set forth in the annexed declaration of Vicente Aguilar, he acknowledges his liability under the Plan.  Additionally, Tthe Debtor attaches paystubs of both herself and her brother Vicente Aguilar in support of her ability to fund the Plan.

**B.    Principals/Affiliates of Debtor's Business**

      The Debtor is an individual.

**C.    Management of the Debtor Before and After the Bankruptcy**

      The Debtor is an individual.

**D.    Events Leading to Chapter 11 Filing**

      Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

      The Debtor filed this case to prevent a foreclosure sale on the Sylmar Property so that a sale or workout could be obtained.

**E.    Significant Events During the Bankruptcy**

      **1.    Bankruptcy Proceedings**

      The following is a chronological list of significant events which have occurred during this case:

      The Court has approved the employment of the following professionals: The Court approved the employment of Jeffrey S. Shinbrot as general insolvency counsel for the Debtor in an order dated June 22, 2015.

      On May 19, 2015, the United States Trustee filed a Motion under 11 U.S.C. §

1112(b)(1) to Convert, Dismiss or Appoint a Chapter 11 Trustee with an Order Directing Payment of Quarterly Fees and for Judgment Thereon ("Motion to Dismiss").  Thereafter, the Debtor cured all compliance reporting deficiencies and payment delinquencies detailed by the United States Trustee.  The United States Trustee and the Debtor entered a stipulation on June 19, 2015 resolving the Motion to Dismiss.

On June 11, 2015, the Debtor filed a Motion to Use Cash Collateral, which was approved by the Court in an order entered on August 14, 2015.  The Court approved the Debtor's use of cash collateral through November 30, 2015.  A continued hearing on cash collateral took place on December 1, 2015.  The Court approved the Debtor's use of cash collateral through March 31, 2016.

On July 21, 2015, a Motion for Relief From Stay – Action in Non-Bankruptcy Forum was filed requesting that the Superior Court case *Estrada v. Aguilar* be permitted to proceed despite the automatic bankruptcy stay for the sole purpose of permitting the attorneys to be relieved as attorneys of record for plaintiff.  On August 10, 2015, the Court entered an order approving the Motion for Relief from Stay. On October 29, 2015, Estrada dismissed her case against the Debtor.  Annexed hereto as Exhibit D is a true and accurate copy of the docket from the Estrada case indicating the dismissal.

The Debtor has filed all of her monthly operating reports.

On December 21, 2015, the Debtor and HSBC Bank entered into a stipulation to resolve plan treatment of the HSBC claim, agreeing to a valuation of $850,000 for the Sylmar property, bifurcating the claim and agreeing to a monthly payment in the amount of $4,181.49.  The Court entered its Order approving this agreement of December 29, 2015.  The stipulation and agreement are annexed hereto as Exhibit E.

Currently, the following significant adversary proceedings and motions are still pending: None.

**2.      Other Legal Proceedings**

In addition to the proceedings discussed above, the Debtor is currently involved in the following non-bankruptcy legal proceedings:  (1) *People v. Aguilar*, Los Angeles Superior

Court, case number 4PY02835, municipal code violations – the only remaining proceeding in this case is a hearing for the Debtor to show sentencing compliance; (2) *Edelmira Estrada, et al. v. Leonarda G. Aguilar*, Los Angeles Superior Court, litigation of allegations of wrongful death. Annexed hereto as Exhibit D is a true and accurate copy of the Los Angeles Superior Court docket indicting a dismissal of the Estrada action.

**3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers**

No funds are estimated to be realized from the recovery of fraudulent and preferential transfers.

**4.    Procedures Implemented to Resolve Financial Problems**

To attempt to fix the problems that led to the bankruptcy filing, Debtor has implemented the following procedures: The Debtor has obtained the consent of HSBC to this Chapter 11 plan. Under the Chapter 11 plan, the Debtor's payments to secured creditors will be reduced. In addition, the Debtor's income has increased because she was able to return to work on June 30, 2015 after disability leave.

**5.    Current and Historical Financial Conditions**

Historically, the Debtor was able to pay her debts as they came due. The Debtor suffered a temporary disability that prevented her from working**.** Her disability insurance benefits were less than her income from employment. The value of the Sylmar Property also declined, resulting in the Debtor owing more than the value of the property. Currently, the Debtor has returned to her regular employment and her income has increased by $1,750.00 per month. She also expects to receive $5,000.00 per month from family members as set forth herein. The Debtor owns the Sylmar Property, valued at approximately $850,000 and which secures debt that exceeds the property's value. The Debtor is on title with her father parents to a single-family residence located at 10487 Laurel Canyon Blvd., Pacoima, California (the Pacoima Property"), which is valued at approximately $400,000 and secures debt that exceeds the property's value. In 2006, the Debtor's father quitclaimed his interest in the Pacoima Property from his sole and separate property to a joint tenancy with the Debtor after being advised that this would act as a method to transfer the property to the Debtor upon his death.

First Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

The Debtor is on title to this property only and she does not have an equitable ownership interest in it.

Under the Plan, the Debtor will pay approximately $325 per month to priority tax claimants; $4,181.49 to HSBC and $150 per month to general unsecured creditors.  As set forth in the Debtor's declaration, she has sufficient cash flow to make these payments.

The identity and fair market value of the estate's assets are listed in Exhibit A.  An appraisal of the Sylmar Property is annexed as Exhibit B.

## III.

## SUMMARY OF THE PLAN OF REORGANIZATION

**A.     What Creditors and Interest Holders Will Receive Under the Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.     Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent has not placed the following claims in a class.

**1.     Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan:

///

///

///

First Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

| **Name** | **Amount Owed** | **Treatment** |
|---|---|---|
| Jeffrey S. Shinbrot, Esq. | $15,000 | Paid in Full on Effective Date, if fees are approved by the Court; Creditor has agreed to payment after the Effective Date if there are insufficient funds on the Effective Date |
| Clerk's Office Fees | $0 | Paid in Full on Effective Date |
| Office of the U.S. Trustee Fees | $325.00 | Paid in Full on Effective Date |
| | TOTAL = $15,325.00 | |

Court Approval of Fees Required:

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay $15,325 worth of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim. As indicated elsewhere in this Disclosure Statement, Debtor will have at least $12,000 in cash on hand on the Effective Date of the Plan. The source of this cash will be the Debtor's savings from her monthly income and family contributions. Jeffrey S. Shinbrot has agreed to accept less than payment in full on the Effective Date if sufficient funds to pay his claim in full are not available.

**2.    Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

8

| **Description** | **Amount Owed** | **Treatment** | |
|---|---|---|---|
| • Name = Franchise Tax Board<br><br>• Type of tax = Income<br><br>• Date tax assessed = 2006 & 2014 | $6,059.78 | Pymt interval | = quarterly |
| | | Pymt amt/interval | = $326.61 |
| | | Begin date | = Last day of the quarter containing the Effective Date |
| | | End date | = 5 years thereafter |
| | | Interest Rate 3% | = 3% |
| | | Total Payout Amount 100 % | = $6,532.20 |
| • Name = Internal Revenue Service<br><br>• Type of tax = Income<br><br>• Date tax assessed = 2006 | $5,129.14 | Pymt interval | = quarterly |
| | | Pymt amt/interval | = $276.48 |
| | | Begin date | = Last day of the quarter containing the Effective Date |
| | | End date | = 5 years thereafter |
| | | Interest Rate % | = 3% |
| | | Total Payout Amount 100% | = $5,529.60 |
| • Name = Los Angeles County Tax Collector<br><br>• Type of tax = Property<br><br>• Date tax assessed = 2011, 2012, 2013, and 2014 | $6,756 | Pymt interval | = quarterly |
| | | Pymt amt/interval | = $364.20 |
| | | Begin date | = Last day of the quarter containing the Effective Date |
| | | End date | = 5 years thereafter |
| | | Interest Rate % | = 3% |

First Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

|  |  | Total Payout Amount 100% | = $7,284 |
| --- | --- | --- | --- |
| Total: | $17,944.92 |  |  |

## C.   Classified Claims and Interests

### 1.   Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT | |
| --- | --- | --- | --- | --- | --- |
| 1. | Secured claim of:<br><br>• Name = HSBC Bank USA, NA<br>• Collateral description = Sylmar Property<br>• Collateral value = $850,000<br>• Priority of security int. = 1st<br>• Principal owed = $950,000<br>• Pre-pet. arrearage amount = $479,943.27<br>• Post-pet. arrearage amount = $57,184.89<br>• Total claim amount = $1,393,670.51 | N | Y | • Pymt interval<br><br>• Pymt amt/interval<br>• Balloon pymt<br><br><br><br><br>• Begin date<br><br>• End date<br><br><br><br><br>• Interest rate %<br><br><br><br>• Total payout 100% of | = Monthly<br><br>= $4,181.49<br><br>= $393,024.93 (approx. depending on Effective Date)<br><br>= December 1, 2015<br><br>= June 1, 2036 (maturity date of loan documents)<br><br>= 4.25% fixed (amortized over 30 years)<br><br>= $1,425,852.96 on secured |

10

| | | | | secured portion of claim | portion of claim |
|---|---|---|---|---|---|
| | | | | • Treatment of Lien | = Creditor to have a secured claim of $850,000; the balance of creditor's claim shall be deem unsecured and the unsecured portion shall be included in Class 4 to be paid as set forth below |
| 2. | Secured claim of:<br><br>• Name = The Mortgage Store<br><br>• Collateral description = Sylmar Property<br><br>• Collateral value = $850,000<br><br>• Priority of security int. = 2nd<br><br>• Principal owed = unknown<br><br>• Pre-pet. arrearage amount = unknown<br><br>• Post-pet. arrearage amount = unknown<br><br>• Total claim amount = $120,000 | N | Y | Creditor's claim is wholly unsecured based on value of Property and shall be unsecured Class 4 to be paid as set forth below; creditor entitled to vote as member of Class 4 only.  The debt to The Mortgage Store shall be fully void, discharged and released against the Sylmar property entry of a chapter 11 discharge of the Debtor. | |

11

First Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

| 2. | Secured claim of: <br><br> • Name = Wells Fargo Bank, NA <br><br> • Collateral description = 10487 Laurel Canyon Blvd., Pacoima, CA 91331 (not estate property) <br><br> • Collateral value = $400,000 (not estate property) <br><br> • Priority of security int. = 1st <br><br> • Principal owed = unknown <br><br> • Pre-pet. arrearage amount = unknown <br><br> • Post-pet. arrearage amount = unknown <br><br> • Total claim amount = $444,560.03 | N | N | Unimpaired; to be paid as agreed under loan documents |
|---|---|---|---|---|

### 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims and their treatment under this Plan (see Exhibit G for more detailed information about each priority unsecured claim): None.

### 3.    Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code

12

Section 507(a).  The following chart identifies this Plan's treatment of the class containing all of

Debtor's general unsecured claims (see Exhibit C for detailed information about each general

unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| 4. | General unsecured claims<br><br>• Total amt of claims = $685,991.00 $1,130,550.98 (which Iincludes $22,320.04 scheduled unsecured claims and unsecured portions of Claims 1 in the amount of $543,671.00 and claim 2 in the amount of $120,000.00, and 3 above) | Y | • Pymt interval<br>• Pymt amt/interval<br>• Begin date<br><br><br>• End date<br><br>• Interest rate %<br><br>• Total payout 1.7% (Percentage payment assumes all possible creditor claims allowed. Debtor reserves the right to file objections to claims both before and after confirmation. Ultimate amount of allowed unsecured claims will be paid pro rata share of amounts paid towards claims in Class 4) | = Quarterly<br>= $600<br>= 15 days after the Effective Date<br><br>= 5 years thereafter<br>= 0<br><br>= $12,000 which shall result in a 1.7% payout over 5 years. |

### 4.    Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the

Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor

are interest holders.  If the Debtor is a partnership, the interest holders include both general and

13

limited partners.  If the Debtor is an individual, the Debtor is the interest holder.  The following chart identifies the Plan's treatment of the Class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 5 | Interest holders | N | Debtor to retain assets not used to pay creditor claims |

**D.    Means of Effectuating the Plan**

   **1.    Funding for the Plan**

   The plan will be funded by the following: The Debtor's income from employment and family contributions as set forth in the annexed declarations.

   **2.    Post-Confirmation Management**

   The Debtor will handle all post-confirmation management issues including payment of creditor claims pursuant to the Plan.

   **3.    Disbursing Agent**

   The Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

**E.    Risk Factors**

   The proposed plan has the following risks: There is a possibility of default under the terms of the Plan, in that the Debtor's income may decrease.  In which case, the Debtor may not have sufficient income to make the payments.  In addition, the Debtor shall receive $5,000.00 per month as rent from her brother Vicente Aguilar who occupies the Sylmar property.  As set forth in the annexed declaration of Vicente Aguilar, he acknowledges his liability under the Plan; however, if he fails to meet this obligation, the income necessary to fund the Plan will need to be replaced by other tenants or means.

///

///

14

**F.    Other Provisions of the Plan**

    **1.    Executory Contracts and Unexpired Leases**

        **a.    Assumptions**

The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan: None.

        **b.    Rejections**

On the Effective Date, the following executory contracts and unexpired leases will be rejected: None.

    **2.    Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates.

    **3.    Retention of Jurisdiction**

The Court will retain jurisdiction to the extent provided by law.

**G.    Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the Debtor's tax liability: At this time, the Debtor is unaware of any negative tax consequences arising from confirmation of the Plan.  The Debtor's attorney, however, does not provide tax advice. Creditors and parties-in-interest should conduct their own independent investigation of the Debtor's tax returns and potential tax consequences.

///

///

# IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

## A.    Who May Vote or Object

### 1.    Who May Object to the Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 2.    Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

#### a.    What is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting

purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS
DECEMBER 31, 2015.  A creditor or interest holder may have an allowed claim or interest
even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is
scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or
unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed
allowed if it is scheduled and no party in interest has objected to the interest.  Consult Exhibit C
to see how the Proponent has characterized your claim or interest.

### b.    What is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class
that is <u>impaired</u> under the Plan.  A class is impaired if the Plan alters the legal, equitable, or
contractual rights of the members of that class.  For example, a class comprised of general
unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what
they are owed.

In this case, the Proponent believes that classes 1, 2, 3, and 4 are impaired and that
holders of claims in each of these classes are therefore entitled to vote to accept or reject the
Plan.  The Proponent believes that class 5 is unimpaired and that holders of claims in each of
these classes therefore do not have the right to vote to accept or reject the Plan.  Parties who
dispute the Proponent's characterization of their claim or interest as being impaired or
unimpaired may file an objection to the Plan contending that the Proponent has incorrectly
characterized the class.

### 3.    Who is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been
disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code
sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any
value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes
are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Code sections
507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes

17

and they are required to receive certain treatment specified by the Code.  Claims in classes that

do not receive or retain any value under the Plan do not vote because such classes are deemed to

have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE,

YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE

PLAN.

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an

unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

the secured part of the claim and another ballot for the unsecured claim.

### 5.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one

impaired class has accepted the Plan without counting the votes of any insiders within that class,

and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be

confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.7. and

8.}.

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2)

in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted,

voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at

least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted

to accept the Plan.

### 7.    Treatment of Nonaccepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court

may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required

by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of

the Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed

down" on nonaccepting classes of claims or interests if it meets all consensual requirements

except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly"

and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan asks the Court to confirm this Plan by "cramdown" on impaired classes if any of these classes do not vote to accept the Plan.  Please note that the proposed Plan treatment described by this Disclosure Statement cannot be crammed down on the following classes: None.  AS A RESULT, IF ANY OF THESE CLASSES DOES NOT VOTE TO ACCEPT THE PLAN, THE PLAN WILL NOT BE CONFIRMED.

## B.    Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims.  Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation.  The Plan Proponent maintains that this requirement is met here for the following reasons:

In a Chapter 7 case, the Debtor's income would not be property of the Estate, and none of the Debtor's income would go to pay creditors.  Under the Plan, the Debtor is contributing

income to pay priority tax, secured and general unsecured claims.

In a Chapter 7 liquidation, the trustee would have no assets of value to liquidate because the Debtor's only property, the Sylmar Property, is encumbered by liens that exceed its value. The secured creditors would likely foreclose on the Sylmar Property, resulting in payment to HSBC, Class 1, only.  Creditors in Classes 2 and 4 would receive nothing.  The Class 3 creditor would only be paid to the extent non-debtors continue to make payments on the debtor or the creditor proceeds against the non-estate property securing the loan.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

First Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

**ASSETS VALUE AT LIQUIDATION VALUES:**

CURRENT ASSETS
|   |   |   |
|---|---|---|
| a. | Cash on hand | $4,500 |
| b. | Accounts receivable | $0 |
| c. | Inventories | $0 |

TOTAL CURRENT ASSETS

$4,500

FIXED ASSETS
|   |   |   |
|---|---|---|
| a. | Office furniture & equipment | $0 |
| b. | Machinery and equipment | $0 |
| c. | Automobiles | $0 |
| d. | Building & Land | $850,000 |

TOTAL FIXED ASSETS

$850,000

OTHER ASSETS
|   |   |   |
|---|---|---|
| a. | Customer list | $0 |
| b. | Other intangibles | $0 |

TOTAL OTHER ASSETS

$0

**TOTAL ASSETS AT LIQUIDATION VALUE**

$854,500

**Less:**
Secured creditor's recovery                     $1,513,670.50 (creditors secured by
                                                estate property only)
**Less:**
Chapter 7 trustee fees and expenses             $60,885
**Less:**
Chapter 11 administrative expenses              $15,325
**Less:**
Priority claims,
excluding administrative expense claims         $17,944.92
**Less:**
Debtor's claimed exemptions                     $0

(1)  Balance for unsecured claims               $0
(2)  Total amount of unsecured claims           $1,130,550.98

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH.
7 LIQUIDATION (2):    = 0%**
**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER
THIS PLAN:    = 1%**

---

**1/**    Note: The deficiency portion of a secured recourse claim must be added to the total amount of unsecured claims.

**2/**    Note: If this percentage is greater than the amount to be paid to the unsecured creditors on a "present value basis" under the Plan, the Plan is not confirmable unless Proponent obtains acceptance by every creditor in the general unsecured class.

First Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 0% |
| Priority Tax Claims | 100% | 0% |
| Class 1 – | 100% of secured portion of claim; 1% of unsecured portion | 57% of total claim (after 6% costs of sale on sale of $850,000) |
| Class 2 – | 1% | 0% |
| Class 3 – | 100% | 0% (but would retain claim against non-debtors and security interest in non-estate property) |
| Class 4 – | 1% | 0% |

**C.    Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Cash debtor will have on hand by Effective Date | $12,000 |
| **To Pay:** Administrative claims | -$325.00 (Jeffrey S. Shinbrot will accept payment after the Effective Date) |
| **To Pay:** Statutory costs & charges | -$0 |

22

| **To Pay:** Other Plan Payments due on Effective Date | -$0 |
|---|---|
| Balance after paying these amounts…………………………………………… | $11,675 |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| $4,500 | Cash in DIP Account now |
|---|---|
| +7,500 | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| +0 | Borrowing |
| +0 | Capital Contributions |
| +0 | Other |
| $12,000 | Total |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

In summary, the Plan proposes to pay $4,703.92 each month ($4,181.49 to HSBC; $322.43 to priority tax creditors; $200 to unsecured creditors). As set forth in the annexed declarations and exhibits, the Debtor will have positive cash flow, after paying operating expenses (in this case, living expenses) and Plan payments for the life of the Plan. The final Plan payment is expected to be paid in or around January 2021. The Plan Proponent contends that the Debtor's financial projections are feasible as evidenced by the exhibits (pay stubs) annexed hereto. Furthermore, aAs discussed earlier in the Disclosure Statement at Section {II.E.4}, Debtor has implemented procedures to increase income, namely returning to work at her regular employer. In addition, Debtor shall receive $5,000.00 per month as rent from her brother Vicente Aguilar who occupies the Sylmar property. As set forth in the annexed

First Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

declaration of Vicente Aguilar, he acknowledges his liability under the Plan

## V.

### EFFECT OF THE CONFIRMATION OF PLAN

**A.    Discharge**

    This Plan provides that upon substantial consummation of the Plan and entry of a final decree by the Court, Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141.  However, the discharge will not discharge any liability imposed by the Plan.

**B.    Revesting of Property in the Debtor**

    Except as provided in Section {V.E.}, and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.    Modification of Plan**

    The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan.

    The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Report**

    Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.  Further status reports shall be filed every 120 days and served on the same entities.

**E.    Quarterly Fees**

    Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an

order of dismissal or conversion to chapter 7.

**F.     Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under §

1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court

orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had

been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will

revest in the Chapter 7, estate.  The automatic stay will be reimposed upon the revested

property, but only to the extent that relief from stay was not previously authorized by the Court

during this case.

The order confirming the Plan may also be revoked under very limited circumstances.

The Court may revoke the order if the order of confirmation was procured by fraud and if the

party in interest brings an adversary proceeding to revoke confirmation within 180 days after

the entry of the order of confirmation.

**G.     Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall

file a motion with the Court to obtain a final decree to close the case.

DATED:  _____, 2016         JEFFREY SHINBROT, APLC


By:_____
       JEFFREY S. SHINBROT, Attorneys for
       Leonarda Aguilar, Debtor in Possession

First Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

# VI.

## SUPPORTING DECLARATIONS

## DECLARATION OF LEONARDA AGUILAR

I, LEONARDA AGUILAR, declare as follows:

I am the debtor in this action.  As to the following facts I know them to be true of my own personal knowledge and if called upon to testify in this matter, I could and would do so as set forth herein.

1.      I have provided documents and information to my attorney, Jeffrey S. Shinbrot, and assisted in preparing the Disclosure Statement.

2.      I have reviewed the foregoing Disclosure Statement, and I believe that its contents are accurate and complete.

3.      I have returned from disability to my full time employment at the Employment Development Department and attach a true and accurate copy of most recent paystub indicating a net monthly income of approximately $1,750.  Additionally, as set forth in the annexed declaration of my brother Vicente Aguilar, he resides at the Sylmar property and will contribute $5,000.00 per month as rent.  My cash flow therefore is sufficient to the fund the Plan as follows:

| | |
|---|---|
| Net Income from Earnings | $1,750.00 |
| Rent ~~Contributions~~ from Vicente Aguilar | $5,000.00 |
| Plan Payments | ($4,704.00) |
| Electricity/Gas | ($40.00) |
| Food | ($350.00) |
| Phone | ($170.00) |
| Rent | ($450.00) |
| Transportation | ($200.00) |
| Vehicle Insurance | ($150.00) |
| Total expenses | ($6,104.00) |

26

~~First~~ Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

| NET CASH FLOW | $646.00 |
|---|---|

I declare under penalty under the laws of the United States of America that the foregoing is true and correct.

_____

Leonarda Aguilar

First Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

**DECLARATION OF VICENTE D. AGUILAR**

I, VICENTE D. AGUILAR declare as follows:

1.      As to the following facts, I know them to be true of my own personal knowledge and if called upon to testify in the matter, I could and would do so as set forth herein.

2.      I am employed by the Department of Water and Power and annexed hereto are true and accurate copies of my paystubs for a four week period, as indicated therein, my net pay is in excess of $6,680.00.00.

3.      I reside at 13781 Eldridge Avenue, Sylmar, California ("Sylmar Property") described in the above Disclosure Statement, and I have agreed to pay $5,000.00 to my sister LEONARDA AGUILAR as rent for my occupancy of the Sylmar Property during the life of her chapter 11 plan.

4.      I acknowledge that this agreement imposes liability in the amounts described under the Plan and I have sought independent legal counsel in connection therewith.

I declare under penalty under the laws of the United States of America that the foregoing is true and correct.

_____
Vicente D. Aguilar

## EXHIBIT A – LIST OF ALL ASSETS

- Farm land located at 13781 Eldridge Avenue, Sylmar, CA 91342 – liens exceed value
- Minimal personal property assets all subject to exemptions. See scheduled B annexed hereto.

~~First~~ Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

1

**EXHIBIT B**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

~~First~~ Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

EXHIBIT C – LIST OF GENERAL UNSECURED CLAIMS

| CLASSIFIED CLAIMS: UNSECURED CLAIMS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Class | Name | Insider | Impaired | SCHEDULED CLAIMS | | FILED CLAIMS | |
| | | | | Amount | D/C/U* | Amount | Objection |
| 3 | Asset Acceptance LLC | N | Y | 625.02 | | 498.88 | N |
| 3 | Cach, LLC | N | Y | 7,216.00 | | | N |
| 3 | Cain And Weiner | N | Y | 146.00 | | | N |
| 3 | Capital One Bank | N | Y | 6,209.58 | | | N |
| 3 | Credit Protection Association | N | Y | 416.00 | | | N |
| 3 | Edelmira Estrada | N | Y | 0.00 | | 0.00 | N |
| 3 | Paula A. Wyatt, Esq. | N | Y | 0.00 | | | N |
| 3 | Financial Credit Network | N | Y | 162.00 | | | N |
| 3 | Grant & Weber | N | Y | 79.00 | | | N |
| 3 | Herbert P. Sears Collection Agency | N | Y | 61.00 | | | N |
| 3 | Jilbert Tahmazaian, Esq. | N | Y | 4,300.00 | | | N |
| 3 | Marshack Medical MSO | N | Y | 830.00 | | | N |
| 3 | Midland Funding, LLC | N | Y | 114.71 | | | N |
| 3 | Pacific Gas & Electricity | N | Y | 430.00 | | | N |
| 3 | Progressive Management | N | Y | 472.00 | | | N |

First Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | System | | | | | | |
| 3 | So. Calif. Edison | N | Y | 84.00 | | | N |
| 3 | Tsi/980 | N | Y | 389.00 | | | N |
| 3 | WFNNB-The Avenue | N | Y | 489.00 | | | N |
| 3 | DIRECTV, LLC | N | Y | 0.00 | | 422.87 | N |
| **TOTAL AMOUNT FOR CLASS** | | | | 22,023.31 | | 921.75 | TOTAL ALLOWED = $22,320.04 |

\* Disputed/contingent/unliquidated

~~First~~ Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan