United States Bankruptcy Court
Central District of California

In re:                                                                Case No. 15-16443-RN
Leonarda Guadalupe Aguilar                                            Chapter 11
        Debtor

## CERTIFICATE OF NOTICE

District/off: 0973-2          User: statumC          Page 1 of 1          Date Rcvd: Jun 24, 2016
                             Form ID: pdf042         Total Noticed: 1

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jun 26, 2016.
db              +Leonarda Guadalupe Aguilar,    241 Redondo Avenue # 6,    Long Beach, CA 90803-5924

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                    TOTAL: 0

            ***** BYPASSED RECIPIENTS *****
NONE.                                                                                    TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jun 26, 2016                          Signature:   /s/Joseph Speetjens


---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on June 24, 2016 at the address(es) listed below:
          Jeffrey S Shinbrot    on behalf of Debtor Leonarda Guadalupe Aguilar jeffrey@shinbrotfirm.com,
          sandra@shinbrotfirm.com
          Kelly L Morrison    on behalf of U.S. Trustee    United States Trustee (LA)
          kelly.l.morrison@usdoj.gov
          Kenneth G Lau    on behalf of U.S. Trustee    United States Trustee (LA) kenneth.g.lau@usdoj.gov
          Leslie M Klott    on behalf of Creditor    OCWEN LOAN SERVICING, LLC bankruptcy@zievelaw.com
          Leslie M Klott    on behalf of Creditor    HSBC Bank USA, N.A., as Trustee on  behalf of ACE
          Securities Corp. Home Equity Loan Trust and for the registered holders of ACE Securities Corp.
          Home Equity Loan Trust, Series 2006-ASAP5, Asset  Backe bankruptcy@zievelaw.com
          Leslie M Klott    on behalf of Creditor    HSBC Bank USA, N.A., as Trustee on behalf of ACE
          Securities Corp. Home Equity Loan Trust and for the registered holders of ACE Securities Corp.
          Home Equity Loan Trust, Series 2006-ASAP5, Asset Backed bankruptcy@zievelaw.com
          Lindsey L Smith    on behalf of Interested Party    Courtesy NEF lls@lnbyb.com,
          lls@ecf.inforuptcy.com
          Steven  Archer    on behalf of Creditor    Kiesel Law LLP and Wyatt Law Firm, LTD.
          archer@kiesel-law.com
          United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
                                                                              TOTAL: 9

Jeffrey S. Shinbrot, Esquire (SBN 155486)
JEFFREY S. SHINBROT, APLC
8200 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone: (310) 659-5444
Fax: (310) 878-8304

Attorneys for Debtor and Debtor-in-Possession
Leonarda Guadalupe Aguilar

**FILED & ENTERED**

**JUN 24 2016**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Lim        DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA LOS ANGELES DIVISION

In re

Leonarda Guadalupe Aguilar

Chapter 11 Debtor and Debtor-in-possession.

Bankruptcy Case No.: 2:15-bk-16443-RN

Chapter 11

**ORDER CONFIRMING DEBTOR'S
SECOND AMENDED CHAPTER 11 PLAN**

Confirmation Hearing Date/Time/Place

Date:  June 9, 2016
Time:  2:00 p.m.
Place:  Courtroom 1645
255 East Temple Street,
Los Angeles, California

The hearing on confirmation of debtor LEONARDA GUADALUPE AGUILAR'S

Second Amended Chapter 11 Plan ("Plan" at docket number 97) came regularly for hearing on

June 9, 2016, ("Confirmation Hearing"), appearances were noted on the record, the Honorable

Richard M. Neiter, United States Bankruptcy Judge, presiding.  The Court considered and

reviewed the Plan, the court-approved Second Amended Disclosure Statement (at docket number

96), the Memorandum in Support of Confirmation filed by the Debtor (at docket number 98), the

Notice of Non-Material Plan Modifications to Debtor's second amended Chapter 11 Plan (at

docket number 100, the "Plan Modifications") all other pleadings and evidence that were

submitted in support of Plan confirmation before or at the time of Confirmation Hearing, the

record of the instant chapter 11 case and arguments and representations of counsel at the

-1-

Confirmation Hearing.  The Court finds that service of process was proper and appropriate.  The Court made findings of fact and conclusions of law as noted on the record, finds that good cause exists, and hereby Orders as follows:

1.      The Plan and Plan Modifications and each and all of the provisions therein are hereby approved and confirmed under section 1129(a) of the United States Bankruptcy Code.

2.      The Effective Date (as defined in the Plan) shall be fourteen days after entry of this Order.

3.      Any and all executory contracts not previously rejected are hereby rejected by the Debtor.

4.      In accordance with Local Bankruptcy Rule 3020-1(b), within 120 days of the entry of this order, the Debtor shall file a status report explaining what progress has been made toward consummation of the confirmed plan of reorganization. The initial report shall be served on the United States Trustee, the 20 largest unsecured creditors, and those parties who have requested special notice. Further reports shall be filed every 120 days thereafter and served on the same entities, unless otherwise ordered by the court.

5.      A post-confirmation status conference shall be held as follows:

>           Date:   August 25, 2016
>           Time:   10:00 a.m.
>           Place:  255 East Temple Street
>                   Courtroom 1375
>                   Los Angeles, California 90012

6.      In accordance with the terms of the Plan, the claim of HSBC Bank USA, N.A., as Trustee on behalf of ACE Securities Corp. Home Equity Loan Trust and for the registered holders of ACE Securities Corp. Home Equity Loan Trust, Series 2006-ASAP5, Asset Backed Pass-Through Certificates c/o Ocwen Loan Servicing, LLC ("HSBC") is hereby bi-furcated between a secured claim in the amount of $850,000 (the "Secured Debt"), and the balance of the claim shall be an unsecured claim, on the terms set forth in the stipulation between HSBC and the Debtor (at docket number 69).  Upon payment of the Secured Debt in full, HSBC shall re-

convey its trust deed recorded at the Los Angeles County Recorder's Office, document number 06-1139391, against the real property commonly known as 13781 Eldridge Avenue, Sylmar, California (annexed hereto as Exhibit "1").

7.    In accordance with the terms of the Plan, the lien of the creditor in Class 2, the Mortgage Store, lien, recorded document number 06-1957580 (annexed hereto as Exhibit "2"), is deemed to be void and unenforceable against the property commonly known as 13781 Eldridge Avenue, Sylmar, California upon order granting the Debtor a chapter 11 discharge.

8.    All estate property is re-vested in the Debtor.

**IT IS SO ORDERED.**

Date: June 24, 2016

Richard M. Neiter
United States Bankruptcy Judge

-3-

**EXHIBIT 1**

**This page is part of your document - DO NOT DISCARD**

**06 1139391**

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**05/24/06 AT 08:00am**

**TITLE(S) :**



L E A D   S H E E T

**FEE**                                               D.T.T.

FEE $

**CODE
20**        D.A. FEE Code 20    $ 2.00

NOTIFICATION SENT ©

**CODE
19**

**CODE
9**

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**        **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

**FIRST AMERICAN TITLE COMPANY LOS ANGELES**

**06 1139391**

Recording Requested By /
Return To:
CREVECOR MORTGAGE INC.
1150 HANLEY INDUSTRIAL CT.
BRENTWOOD, MO 63144
(800) 860-0878
ATTN: CREVE COR MORTGAGE INC.

Prepared By:  2247404-11

CREVECOR MORTGAGE INC.
1150 HANLEY INDUSTRIAL CT.
BRENTWOOD, MO 63144
(800) 860-0878

2503-010-029

[Space Above This Line For Recording Data]

# DEED OF TRUST

AGUILAR
Loan #: 247963
PIN:
MIN: 100209800002479632

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated APRIL 25, 2006, together with all Riders to this document.
**(B) "Borrower"** is Leonarda G Aguilar, a single WOMAN. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is CREVE COR MORTGAGE INC.. Lender is a CORPORATION organized and existing under the laws of MISSOURI. Lender's address is 1150 HANLEY INDUSTRIAL CT., BRENTWOOD, MO 63144.
**(D) "Trustee"** is FIRST AMERICAN TITLE.
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument. MERS** is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated APRIL 25, 2006. The Note states that Borrower owes Lender NINE HUNDRED FIFTY THOUSAND and 00/100 Dollars (U.S. $950,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JUNE 1, 2036.
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☒ Other(s) [specify] DB - INTEREST ONLY, FLOOR | |

## SEE EXHIBIT "A" ATTACHED

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are

CALIFORNIA --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
312.59      Page 1 of 11      Form 3005 1/01

247963

imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), *as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.* As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **LOS ANGELES**:

which currently has the address of **13781 ELDRIDGE AVENUE SYLMAR**, California **91342** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

CALIFORNIA --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

312.59                                   Page 2 of 11                              Form 3005 1/01

**06 1139391**

247963

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest

05/24/06

CALIFORNIA --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
312.59                     Page 3 of 11                     Form 3005 1/01

**06  1139391**

247963

or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the

CALIFORNIA --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
   312.59                    Page 4 of 11                    Form 3005 1/01

**06 1139391**

247963

restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this

**06 1139391**

247963

Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**06 1139391**

247963

Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already

06  1139391

247963

collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

CALIFORNIA --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

312.59                                                    Page 8 of 11                                          Form 3005 1/01

**06  1139391**

247963

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the

06  1139391

247963

occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

*Leonarda G. Aguila* 5-11-06

- BORROWER - Leonarda G Aguilar - DATE -

06  1139391

*12*

247963

[Space Below This Line For Acknowledgment]

State of  CALIFORNIA

County of  KERN

On  5-11-2006  , before me,  Christopher David Posey  a Notary Public,
personally appeared  LEONARDA G. AGUILAR

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s), whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.



Signature _____ (Seal)
Notary Public

My Commission Expires:  OCT.30, 2009

CALIFORNIA --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
        312.59                              Page 11 of 11                          Form 3005 1/01

06  1139391

*13*

## ADJUSTABLE RATE RIDER
### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

AGUILAR
Loan #: 247963
MIN: 100209800002479632

THIS ADJUSTABLE RATE RIDER is made this **25TH** day of **APRIL, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to **CREVECOR MORTGAGE INC.** (the "Lender") of the same date and covering the property described in the Security Instrument and located at: **13781 ELDRIDGE AVENUE, SYLMAR, CA 91342** [Property Address].

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
    The Note provides for an initial interest rate of **7.600%**. The Note provides for changes in the interest rate and the monthly payments, as follows:
    4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
        (A)  Change Dates
        The interest rate I will pay may change on the first day of **JUNE, 2008**, and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
        (B)  The Index

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) -Single Family- Freddie Mac UNIFORM INSTRUMENT
⟳    3434.13                    Page 1 of 3                    Form 5120 3/04

05/24/03

## 06 1139391

247963

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **FIVE AND SIX TENTHS** percentage point(s) (**5.600%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D)   Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.600%** or less than **7.600%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point(s) (**1.000%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **13.600%**.

### (E)   Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)   Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.**    **+ TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) -Single Family- Freddie Mac UNIFORM INSTRUMENT

3434 13                          Page 2 of 3                          Form 5120 3/04

## 06 1139391

247963

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

*Leonarda G. Aguilar*    5-11-2006
- BORROWER - Leonarda G Aguilar - DATE -

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) -Single Family- Freddie Mac UNIFORM INSTRUMENT
3434.13                        Page 3 of 3                        Form 5120 3/04

06 1139391

## ADDENDUM TO ADJUSTABLE RATE RIDER
## (FLOOR)

AGUILAR
Loan #: 247963
MIN: 100209800002479632

Borrower Name(s):
**LEONARDA G AGUILAR**

Adjustable Rate Rider Date: **APRIL 25, 2006**

For valuable consideration, receipt of which is hereby acknowledged, both Borrower and Lender agree that this ADDENDUM TO ADJUSTABLE RATE RIDER ("Addendum") amends that certain Adjustable Rate Rider ("Rider") to the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of date shown above and given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note ("Note"), to **CREVECOR MORTGAGE INC.** ("Lender") and dated the same date as this Addendum covering the property described in the Security Instrument and located at:

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument and the Rider, Borrower and Lender further covenant and agree as follows:

### LIMIT ON INTEREST RATE CHANGES

This loan has an interest rate "floor" which will limit the amount the interest rate can decrease. Regardless of any change in the Index, the interest rate during the term of this loan will never be less than **7.600%**, which is called the "floor rate", over the life of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum to Adjustable Rate Rider

*Leonarda G. Aguilar*    5-11-2006
- BORROWER - Leonarda G Aguilar - DATE -

8800.3                                  Page 1 of 1

**06 1139391**

## INTEREST ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

AGUILAR
Loan #: 247963
MIN: 100209800002479632

**THIS ADDENDUM** is made this **25TH** day of **APRIL, 2006**, and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to **CREVECOR MORTGAGE INC.** (the "Lender").

**THIS ADDENDUM** supercedes Section 4(C) of the Rider. None of the other provisions of the Note are changed by this Addendum.

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(C) Calculation of Changes**
      Before each Change Date, the Note Holder will calculate my new interest rate by adding **FIVE AND SIX TENTHS** percentage points (**5.600%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

      During this Interest Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest on the lower principal balance. At the end of the Interest Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest Only Period, my payment amount will not be reduced due to voluntary prepayments.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Leonarda G. Aguila*   5-11-2006
- BORROWER - Leonarda G Aguilar - DATE -

FH6D03U
5062.29                    Page 1 of 1                    7/03

05/24/06

06 1139391

## EXHIBIT "A"

### LEGAL DESCRIPTION

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 1:

THE NORTHWESTERLY 172.87 FEET OF THE SOUTH EASTERLY 1037.23 FEET OF THE NORTHEASTERLY 630 FEET OF BLOCK 16 OF MACLAY RANCHO EX-MISSION DE SAN FERNANDO AS PER MAP RECORDED IN BOOK 37 PAGE 5 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

AN EASEMENT FOR THE PURPOSE OF MAINTAINING THERE ON A FENCE AND FOR INCIDENTAL PURPOSES OVER THE NORTH WESTERLY 3.00 FEET OF THE SOUTH EASTERLY 1040.23 FEET OF THE NORTH EASTERLY 630.00 FEET OF BLOCK 16 OF MACLAY RANCHO EX-MISSION OF SAN FERNANDO, AS PER MAP RECORDED IN BOOK 37 PAGE 5 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

05/24/06

06 1139391

**EXHIBIT 2**

▲    **This page is part of your document - DO NOT DISCARD**    ▲

**06 1957580**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**09/01/06 AT 08:00am**

## TITLE(S) :

▲        ▲

L E A D    S H E E T

FEE    FEE $  44  PP    D.T.T.
DAF $  4
C-20    21

CODE
20

CODE
19

CODE
9

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**

▲    **THIS FORM IS NOT TO BE DUPLICATED**    ▲

Recording Requested By:

THE MORTGAGE STORE FINANCIAL,
CORPORATION

After Recording Return To:
THE MORTGAGE STORE FINANCIAL,
CORPORATION
707 WILSHIRE BLVD., 26TH FLOOR
LOS ANGELES, CA  90017

06 1957580

Prepared By:

*14133945.13 8*

LOAN NO.: H0802061522
ESCROW NO.:  023618

────── [ Space Above This Line For Recording Data ] ──────

MIN: 10014150000242369
MERS Phone: 1-888-679-6377

2503-010-029

## DEED OF TRUST AND ASSIGNMENT OF RENTS

This deed of trust secures an obligation which calls for payment of interest at a variable interest rate.  THIS
DEED OF TRUST is made this        24th        day of        AUGUST, 2006        , between
LEONARDA G. AGUILAR, A SINGLE WOMAN

herein called "Trustor,"
INVESTORS TITLE COMPANY

herein called "Trustee," and "Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for
THE MORTGAGE STORE FINANCIAL, INC., A CALIFORNIA CORPORATION

(hereinafter "you" or "Lender" and and Lender's successors and assigns.)  MERS is organized and existing under
the laws of delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS, herein called "Beneficiary."

RIDERS TO THIS SECURITY INSTRUMENT:  If one or more riders are executed by Borrower and recorded
together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into
and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a
part of this Security Instrument.
[Check box below]

☐

*This deed of trust is second subject to a first
already of Record.*

Initials: _____

HELOC - CA Deed of Trust with MERS                                                    4/00
FE - 4331(CA) (0204)                    Page 1 of 10           LENDER SUPPORT SYSTEMS, INC. CWH-31CA.CWH (07/03)

Trustor irrevocably grants, transfers and assigns to Trustee, in trust and with power of sale, all of the real property in the City or Town of                    (SYLMAR AREA) LOS ANGELES                              , County of LOS ANGELES                                        State of California, having the street address of
13781 ELDRIDGE AVENUE, (SYLMAR AREA) LOS ANGELES, CA 91342

and more specifically described as:
SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID number: 2503-010-029
                                                                together with all improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Beneficiary to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this deed of trust; and all of the foregoing, together with said property (or the leasehold estate if this deed of trust is on a leasehold) are herein referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

1.        THIS DEED OF TRUST SECURES:
        a.    All of the obligations of Trustor in favor of Beneficiary or order under the terms of a revolving credit agreement dated        AUGUST 24, 2006        , herein called Agreement.   The Agreement provides, among other things, for the payment of all sums advanced by Beneficiary from time to time pursuant to the Agreement and for the payment of interest.  The maximum principal obligation under the Agreement to be secured by this deed of trust at any one time is
ONE HUNDRED TWENTY THOUSAND  AND 000/1000THS

Dollars ($ 120,000.00        ) unless Beneficiary, with Trustor's written consent, hereafter increases this amount.  Advances made by Beneficiary to protect the security of this deed of trust or to preserve the Property shall not be subject to the limitation of the preceding sentence.

The security of this deed of trust shall not be affected by the extension, renewal or modification from time to time of the obligations, instruments or agreements described above.

        b.    Payment of any and all obligations and liabilities, whatsoever, whether primary, secondary, direct, indirect, fixed or contingent, whether now or hereafter due from Trustor (or any successor in interest to Trustor) whether created directly or acquired by assignment if the document evidencing such obligation or liability or any other writing signed by Trustor (or any successor in interest to Trustor) specifically provides that said obligation or liability is secured by this deed of trust.

        c.    Performance of each agreement of Trustor herein contained or contained in any other agreement, instrument or other writing to which Trustor is a party if the same is written in connection with any of the foregoing.

        d.    Payment of all sums to be expended by the Beneficiary or Trustee pursuant to the terms hereof.

FE - 4331(CA) (0204)                            Page 2 of 10                                    Initials _____
                                                                                        4/00

06 1957580

2.    TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

a.    To keep the Property in good condition and repair; not to remove or demolish any building or improvement thereon; to complete or cause to be completed any construction of buildings or other improvements thereon which are financed in whole or in part by the indebtedness secured hereby and to restore promptly and in good and workmanlike manner any building or other improvement which may be damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting the Property or requiring any alteration or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, weed, fertilize, fumigate, spray, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

b.    To provide, maintain and deliver to Beneficiary fire and other insurance on the Property satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder or invalidate any act done pursuant to such notice.

c.    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this deed of trust.

d.    To pay at least ten days before delinquency all taxes and assessments affecting the Property, including, without limitation, assessment on appurtenant water stock, all encumbrances, charges and liens on the Property or any part thereof, and all costs, fees and expenses of this Trust.

e.    That should Trustor fail to make any payment or do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may:

(1)    Make or do the same in such manner and to such extent as either may deem necessary or appropriate to protect the security hereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes.

(2)    Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or power of Beneficiary or Trustee.

(3)    Pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior and superior hereto.

(4)    In exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

06 1957580

f.    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the maximum rate allowed by law in effect at the date hereof or at the option of Beneficiary, such sums may be added to the principal balance of any indebtedness secured hereby and shall bear the highest rate of interest as any such indebtedness.

g.    To pay for any statement provided for by the law in effect on the date hereof regarding the obligation secured hereby in the amount demanded by the Beneficiary but not to exceed the maximum allowed by law at the time the statement is demanded.

3.    IT IS FURTHER AGREED THAT:

a.    Any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

b.    By accepting payment of any sum secured hereby after its due date, or after the filing of notice of default and of election to sell, Beneficiary shall not waive its right to require prompt payment when due of all other sums so secured, or to declare default for failure so to pay, or to proceed with the sale under any such notice of default and of election to sell, for any unpaid balance of said indebtedness.  If Beneficiary holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after the sale is made hereunder, and on any default of Trustor, Beneficiary may, at its option, offset against any indebtedness owing by it to Trustor, the whole or any part of the indebtedness secured hereby.

c.    Without affecting the liability of any person, including, without limitation, Trustor, for the payment of any indebtedness secured hereby, or the lien of this deed of trust on the remainder of the Property for the full amount of any indebtedness unpaid, Beneficiary and Trustee are respectively empowered as follows:

(1)    Beneficiary may from time to time and without notice (a) release any person liable for the payment of any of the indebtedness, (b) extend the time or otherwise alter the terms of payment of any of the indebtedness, (c) accept additional security therefor of any kind, including deeds of trust or mortgages, (d) alter, substitute or release any of the Property securing the indebtedness.

(2)    Trustee may, at any time, and from time to time, upon the written request of Beneficiary (a) consent to the making of any map or plat of the Property, (b) join in granting any easement or creating any restriction thereon, (c) join in any subordination or other agreement affecting this deed of trust or the lien or charge thereof or, (d) reconvey, without any warranty, all or any part of the Property.

06 1957580

d.    Upon (a) written request of Beneficiary or (b) performance of all obligations of the Trustor hereunder and under each and every note, guarantee, Agreement or other writing evidencing the indebtedness secured hereby, and upon surrender of this deed of trust to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder.  The recital in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."  Five years after issuance of such reconveyance, Trustee may destroy said note, guarantee, Agreement or other evidence of indebtedness and this deed of trust (unless directed in such request to retain them).

e.    Trustor hereby gives to and confers upon Beneficiary the right, power and authority during the continuance of these trusts to collect the rents, issues and profits of the Property and of any personal property located thereon, and hereby absolutely and unconditionally assigns all such rents, issues and profits to Beneficiary; provided, however, that Beneficiary hereby consents to the collection and retention of such rents, issues and profits as they accrue and become payable only if Trustor is not, at such time, in default with respect to payment of any indebtedness secured hereby or in the performance of any agreement hereunder.  Upon any such default, Beneficiary may at any time, without notice, either in person, by agent, or by a receiver to be appointed by a court, without regard to the adequacy of any security for the indebtedness hereby secured and without limiting the generality of Section 2.e.(1), above, enter upon and take possession of the Property or any part thereof, and in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine; also perform such acts of repair, nurturing, cultivation, irrigation, weeding, fertilizing, fumigation, spraying, pruning or protection, as may be necessary or proper to conserve the value of the Property or any trees, planting or crops growing thereon; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate; also prepare for harvest, sever, remove, and sell any crops that may be growing upon the premises, and apply the net proceeds thereof to the indebtedness secured hereby.  The entering upon and taking possession of the Property and performance or failure to perform any of the acts described in the preceding sentence, the collection of or failure to collect such rents, issues and profits, and the application thereof as aforesaid, shall not waive or cure any default or notice of default hereunder, or invalidate any act done pursuant to such notice and shall not constitute or otherwise result in any assumption by or liability of Beneficiary for maintenance, depreciation, misuse or risk of loss other than for damage or loss to the Property due to Beneficiary's gross negligence or intentional torts.  Trustor also assigns to Trustee, as further security for the performance of the obligations secured hereby, all prepaid rents and all monies which may have been or may hereafter be deposited with said Trustor by any lessee of the premises herein described, to secure the payment of any rent, and upon default in the performance of any of the provisions hereof, Trustor agrees to deliver such rents and deposits to the Trustee.

FE - 4331(CA) (0204)                        Page 5 of 10                        Initials _____    4/00

06  1957580

f.    Upon default by Trustor in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Beneficiary may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Beneficiary.

g.    Waiver of a right granted to Beneficiary hereunder as to one transaction or occurrence shall not be deemed to be a waiver of the right as to any subsequent transaction or occurrence. Beneficiary may rescind any notice before Trustee's sale by executing a notice of rescission and recording the same. The recordation of such notice shall constitute also a cancellation of any prior declaration of default and demand for sale, and of any acceleration of maturity of indebtedness affected by any prior declaration or notice of default. The exercise by Beneficiary of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, nor impair the right of the Beneficiary to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the note or deed of trust, or any of the rights, obligations or remedies of the Beneficiary or Trustee hereunder.

h.    At least three months or any lesser period required by law having elapsed between the recordation of the notice of default and the date of sale, Trustee, having first given notice of sale as then required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as the Trustee may determine, at public auction to the highest bidder for cash, in lawful money of the United State of America, payable at the time of sale except as otherwise permitted by law. Trustee may postpone sale of all or any portion of the Property by public announcement at the time of sale, and from time to time thereafter may postpone the sale by public announcement, all as permitted by law. Trustee shall deliver to the purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recital in any such deed of any matters or facts, stated either specifically or in general terms, or as conclusions of law or fact, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with the sale, the Trustee shall apply the proceeds of this sale to the payment of all sums then secured hereby, in such order and manner as may be required by the Beneficiary; the remainder, if any, to be paid to the person or persons legally entitled thereto. If Beneficiary shall elect to bring suit to foreclose this deed of trust in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage, Beneficiary shall be entitled to reasonable attorney's fees and litigation costs.

i.    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this deed of trust is recorded and the name and address of the new Trustee.

06 1957580

j.   This deed of trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.  The term Beneficiary shall mean the owner and holder, including, without limitation, pledgees, of the note, guarantee, Agreement, or other evidence of indebtedness secured hereby, whether or not named as Beneficiary herein.  In this deed of trust, whenever the context so requires, the singular number includes the plural.

k.   Trustee accepts this Trust when this deed of trust, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

l.   If Trustor or any successor in interest to Trustor sells, transfers or encumbers any interest in the Property, whether voluntarily or involuntarily, or if a beneficial interest in Trustor is sold or transferred, voluntarily or involuntarily, and Trustor is not a natural person:  (a) the transferor and the transferee shall each immediately give written notice of said transfer to the Beneficiary, at its address designated on the first page of this deed of trust; (b) if the deed of trust secures Trustor's obligation under an Agreement as defined herein, all credit extended by Beneficiary under the Agreement, whether before or after the property is transferred, shall be secured under this deed of trust as if no transfer had occurred except for credit extended by Beneficiary more than five days after it has received the written notices required by this paragraph.

m.   The pleading of any statute of limitations as a defense to any and all obligations secured by this deed of trust is hereby waived to the full extent permitted by law.

4.   WITH REGARD TO ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES, TRUSTOR AGREES:

a.   As used in this Paragraph 4:

(1)   "Environmental Law" means all federal, state and local law concerning the public health, safety or welfare, environment or a Hazardous Substance, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sec. 9601 et seq., Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., Toxic Substances Control Act, 15 U.S.C. Sec. 2601 et seq., Hazardous Materials Transportation Act, 49 U.S.C. Sec. 1801 et seq., Clean Water Act and Water Quality Act of 1987, 33 U.S.C. Sec. 1251 et seq., Safe Drinking Water Act, 41 U.S.C. Sec. 300f et seq., Clean Air Act, 42 U.S.C. Sec. 7901 et seq., Carpenter-Presley-Tanner Hazardous Account Act, Cal.Health & Safety Code Sec. 25300 et seq., Hazardous Waste Control Law, Cal.Health & Safety Code Sec. 25100 et seq., Porter-Cologne Water Quality Control Act, Cal.Water Code Sec. 1300 et seq., Hazardous Waste Disposal Land Use Law, Cal.Health & Safety Code Sec. 25220 et seq., Safe Drinking Water and Toxic Enforcement Act of 1986, Cal.Health & Safety Code Sec. 25249.5 et seq., Hazardous Substances Underground Storage Tank Law, Cal.Health & Safety Code Sec. 25280 et seq., Air Resources Law, Cal.Health & Safety Code Sec. 3900 et seq., Hazardous Materials Release Response Plans and Inventory, Cal.Health & Safety Code Sec. 25500 et seq., and Toxic Pits Cleanup Act of 1984, Cal.Health & Safety Code Sec. 25208 et seq.

06 1957580

(2) "Hazardous Substance" means any substance which has characteristics of ignitability, corrosivity, toxicity, reactivity or radioactivity or other characteristics which render it dangerous or potentially dangerous to public health, safety or welfare or the environment, including without limitation, (i) petroleum or any fraction or other byproduct thereof, (ii) asbestos, (iii) lead, (iv) cyanide, (v) polychlorinated biphenyls, (vi) urea formaldehyde and (vii) anything defined as a "hazardous material," "toxic substance," "hazardous substance," "hazardous waste" or "waste" under any Environmental Law, including without limitation, "hazardous substance" as defined in Cal.Health & Safety Code Sec. 25316 and "waste" and "hazardous substance" as defined in Cal.Water Code Sec. 13050(d) and Sec. 13050(p)(1), respectively. The term is intended by Trustor and Beneficiary to be interpreted in its most comprehensive and cumulative sense.

b.   Trustor represents and warrants that except as disclosed to and acknowledged in writing by Beneficiary before the date of this deed of trust:

(1)   No Hazardous Substance has been located, used, manufactured, generated, treated, handled, stored, spilled, disposed of, discharged or released by any person on, under or about the Property.

(2)   Trustor has no knowledge of or reason to believe that there is any pending or threatened investigation, assessment, claim, demand, action or proceeding of any kind relating to (i) any alleged or actual Hazardous Substance located under or about the Property or (ii) alleged or actual violation or noncompliance by Trustor or any tenant of Trustor with regard to any Environmental Law involving the Property.

(3)   Neither Trustor nor any tenant of Trustor is required by any Environmental Law to obtain or maintain any permit, license, financial responsibility certificate or other approval as a condition to its business operations or in connection with its use, development or maintenance of the Property.

c.   Trustor represents and warrants that Trustor and every tenant of Trustor have been, are and will remain in full compliance with any Environmental Law applicable to its business operations and its use, development or maintenance of the Property.

d.   Trustor agrees to permit, or cause any tenant of Trustor to permit, Beneficiary to enter and inspect the Property at any reasonable time for purposes of determining, as Beneficiary deems necessary or desirable: (i) the existence, location and nature of any Hazardous Substance on, under or about the Property, (ii) the existence, location, nature, magnitude and spread of any Hazardous Substance that has been spilled, disposed of, discharged or released on, under or about the Property or (iii) whether or not Trustor and any tenant of Trustor are in compliance with applicable Environmental Law. If Trustor or its tenant fails to comply fully with the terms hereof, Beneficiary may obtain affirmative injunctive relief therefor.

e.   Trustor agrees to indemnify and hold Beneficiary and its successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including, without limitation, all costs of litigation and attorneys' fees, which Beneficiary and its successors and assigns may directly or indirectly sustain or suffer as a consequence of any inaccuracy or breach of any representation, warranty or promise made in this deed of trust in connection with any Hazardous Substance or Environmental Law. Notwithstanding any of the language in the deed of trust to the contrary, this indemnity covers claims asserted after all the indebtedness secured by this deed of trust has been paid and discharged, whether or not the deed of trust has also been reconveyed to Trustor. The only exclusions hereto may relate to claims arising out of the affirmative acts of Beneficiary or of a third party after Trustor's interest in the Property has terminated.

06 1957580



f.   The provisions of this Paragraph 4 shall not be affected by the acquisition by Beneficiary or its successors or assigns of any ownership or other interest in the Property beyond Beneficiary's security interest in the Property created under this deed of trust, whether or not such acquisition is pursuant to the foreclosure of this deed of trust or a merger of the interest of the Beneficiary or its successors and assigns in the Property.

5.   ADDITIONAL PROVISIONS:

a.   The execution of this deed of trust by any person who has no present interest in the Property shall not be deemed to indicate that such an interest presently exists.  Rather, execution of this deed of trust by such a person shall constitute such person's agreement that if such person hereafter acquires an interest in the Property, such interest shall be subject to Beneficiary's interest hereunder.

b.   The execution of this deed of trust by any person who has a present interest in the Property shall not in itself be deemed to indicate that such person is liable to Beneficiary for any obligation described in Section 1., above.  Any personal liability of such person to Beneficiary shall be determined on an independent basis (such as execution of the document or documents evidencing the obligation described in Section 1., above).  Execution of this deed of trust by any such person shall nevertheless indicate that such person's interest in the Property shall be subject to Beneficiary's interest hereunder.

The undersigned Trustors request that a copy of any notice of default, and of any notice of sale hereunder, be mailed to their respective addresses set forth opposite each signature.

<u>By signing below, Trustor agrees to all the terms and conditions of this deed of trust.</u>

Mailing Address For Notices

_____
                                             -Witness


_____
                                             -Witness


*Leonarda G. Aguilar* ____ (Seal)          _____ (Seal)
LEONARDA G. AGUILAR          -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                                -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                                -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                                -Borrower                                      -Borrower


FE - 4331(CA) (0204)                    Page 9 of 10                           4/00

06 1957580

State of CALIFORNIA
County of Los Angeles          } ss.

On 08-24-02 , before me Arce A. Gomez, Notary Public , personally appeared
LEONARDA G. AGUILAR

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.





ARCE A. GOMEZ
Commission # 1505823
Notary Public - California
Los Angeles County
My Comm. Expires Aug 8, 2008

(Seal)

FE - 4331(CA) (0204)          Page 10 of 10          4/00

06 1957580

**Exhibit A**
**LEGAL DESCRIPTION**

All that certain real property in the County of LOS ANGELES, State of California, described as follows:

PARCEL 1:

THE NORTHWESTERLY 172.87 FEET OF THE SOUTHEASTERLY 1037.23 FEET OF THE
NORTHEASTERLY 630 FEET OF BLOCK 16 OF MACLAY RANCHO EX-MISSION DE SAN
FERNANDO, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 37, PAGE(S) 5 OF MISCELLANEOUS
RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

AN EASEMENT FOR THE PURPOSE OF MAINTAINING THEREON A FENCE AND FOR
INCIDENTAL PURPOSES OVER THE NORTHWESTERLY 3.00 FEET OF THE
SOUTHEASTERLY 1040.23 FEET OF THE NORTHEASTERLY 630.00 FEET OF BLOCK 16 OF
MACLAY RANCHO EX-MISSION OF SAN FERNANDO, AS PER MAP RECORDED IN BOOK
37, PAGE(S) 5 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

APN No:    2503-010-029

06 1957580